IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. 8:22-cv-1981-TPB-JSS

STATE OF FLORIDA, et al.,

*Plaintiffs*,

v.

FOOD AND DRUG ADMINISTRATION,
et al.,
*Defendants*.

## PLAINTIFFS' OPPOSITION TO
## DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

On November 29, Defendants moved for a protective order "prohibiting [Plaintiffs] from moving to compel compliance with previously served discovery requests or serving any additional requests unless such discovery has been expressly authorized by the Court." Motion 2, ECF No. 29.

Defendants are wrong that Plaintiffs are not entitled to discovery on their claim for agency inaction. Discovery is appropriate, well-supported by caselaw, and necessary for the Court's merits review of Plaintiffs' agency inaction claim. But, in any event, Defendants are not entitled to a protective order, much less the sweeping protective order they seek shutting down all discovery in this case.

1

The Court has already scheduled a case management conference for December 13, at which time the Court may wish to resolve the parties' dispute about whether Plaintiffs are entitled to discovery on their agency inaction claim—an issue that was addressed at length in the parties' Case Management Report. *See* ECF No. 27 at 1–5 (explaining parties' competing discovery positions); Notice, ECF No. 28 (scheduling December 13 conference). In the meantime, Defendants suffer no harm—a prerequisite for a protective order—because they are free to serve objections to any discovery they believe is inappropriate, and Plaintiffs have not indicated that they intend to move to compel responses to the previously served discovery requests or serve additional discovery requests before the December 13 conference.

The Court should deny Defendants' request for a protective order preemptively shutting down the normal discovery process for the entirety of this litigation.

**ARGUMENT**

**I.    Discovery is Appropriate on Plaintiffs' Agency Inaction Claim.**

Defendants assert that Plaintiffs' Administrative Procedure Act ("APA") agency inaction claim is exempt from discovery because it is allegedly "an action for review on an administrative record." L.R. 3.02(d)(2); *see* Motion 6, ECF No. 29. But Plaintiffs' APA claim alleges agency *inaction*, and courts routinely hold that such claims are not resolved on an administrative record

2

because there is no final agency action in the first place, and thus no administrative record to "support" any such action.

As one court aptly explained: "When it comes to agency inaction under 5 U.S.C. § 706(1), 'review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.' … Therefore, 'there may well be reason for discovery, since agency delay is not necessarily a discrete event resulting from a decision based upon some sort of administrative record, but may be simply … after-the-event justifications [] which may need to be explored by plaintiffs.'" *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 100–01 (D.D.C. 2013) (citations omitted). Many courts have agreed. *See Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000); *Tribe v. Bureau of Land Mgmt.*, 2022 WL 1778525, at *5 (E.D. Cal. June 1, 2022); *Gona v. USCIS*, 2021 WL 1226748, at *2 (D.D.C. Apr. 1, 2021); *Red Wolf Coal. v. U.S. Fish & Wildlife Serv.*, 210 F. Supp. 3d 796, 802 (E.D.N.C. 2016); *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012); *Sierra Club v. U.S. Dep't of Transp.*, 245 F. Supp. 2d 1109, 1119 (D. Nev. 2003); *Cobell v. Babbitt*, 91 F. Supp. 2d 1, 38 (D.D.C. 1999).[1]

---

[1] Defendants' extensive citation to *Sierra Club v. U.S. Dep't of Energy*, 26 F. Supp. 2d 1268 (D. Colo. 1998), is unpersuasive. *See* Motion 9–10, ECF No. 29. Although the plaintiff there alleged agency inaction, there was no claim of unlawful delay, as here, which requires additional information about the decision-making process itself. The

3

Discovery is often appropriate in agency inaction cases for the additional reason that courts need more information than any sparse administrative record could provide. For example, "an isolated administrative record would not allow the Court to determine whether the agency adheres to a rule of reason in adjudicating [plaintiffs'] applications," making discovery "necessary to resolve [the APA] inaction claim." *Gona*, 2021 WL 1226748, at *2. That consideration is a key part of Plaintiffs' APA inaction claim here. *See* Am. Compl. ¶¶ 90–95, ECF No. 7; *see also* Part II, *infra*.

Defendants cite several cases stating that an administrative record is the "focal point" for review, Motion 6, ECF No. 29, or that discovery is presumptively unavailable in APA cases, *id.* at 12–13, but those cases involved challenges to final agency action, not claims of agency inaction, *see, e.g.*, *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 732 (1985); *Marllantas, Inc. v. Rodriguez*, 806 F. App'x 864, 866 (11th Cir. 2020); *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Engineers ("PEACH")*, 87 F.3d 1242,

---

court also acknowledged that "indications of agency policy preferences, and past conduct of the agency" would be relevant "to determine whether an agency unlawfully withheld agency action required by law," but the discovery requests in that case were not relevant to those issues. By contrast, Plaintiffs in this case have requested information, for example, about "past conduct of the agency" diverting foreign drugs to the United States pursuant to other programs, *see* Part II, *infra*, which *Sierra Club* does not foreclose. And even if *Sierra Club* stood for the broad proposition Defendants' assert—which it does not—it is outweighed by the many cases concluding discovery is appropriate when assessing agency action unlawfully withheld or unreasonably delayed.

1246 (11th Cir. 1996); *Wall v. Centers for Disease Control & Prevention*, No. 6:21-cv-975, 2021 WL 4948142, at *2 (M.D. Fla. Oct. 7, 2021) ("[A]ll parties agree this case is an action for review of an administrative record."); *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) ("[C]ourts have consistently recognized that, for the purpose of judicial review *of agency action*, deliberative materials antecedent to the agency's decision fall outside the administrative record." (emphasis added)).[2]

The rationale for precluding discovery in cases challenging final agency action is that a court should generally not "conduct its own investigation and substitute its own judgment for the administrative agency's decision." *PEACH*, 87 F.3d at 1246. But Plaintiffs do not ask this Court to second-guess final agency action. Rather, they ask the Court to compel the agency to take final agency action in the first place. Thus, contrary to Defendants' view, Plaintiffs

---

[2] Defendants' assertion that Plaintiffs "must first file a motion seeking authorization to conduct discovery," Motion 12, ECF No. 29 (quoting *Wall*, 2021 WL 4948142, at *2), is unpersuasive. It relies on an unpublished decision that in no way implicates agency inaction, and where all parties agreed review should be on the administrative record. *See Wall*, 2021 WL 4948142, at *2. In fact, that decision involved a 206-page complaint with 23 separate causes of action, *see Wall v. Centers for Disease Control & Prevention*, No. 6:21-cv-975, 2021 WL 3008588, at *1 (M.D. Fla. June 29, 2021), where the court had already "found that the motions to dismiss … are both clearly meritorious and completely dispositive of the claims" so "there is good cause to stay discovery." *Wall*, 2021 WL 4948142, at *1. The best case Defendants muster in support of their position is so clearly inapposite that it supports the reasonableness of Plaintiffs' position here.

5

are not asking this Court to "conduct a *de novo* inquiry" and "reach its own conclusions based on such an inquiry." ECF No. 27 at 4.

Defendants' position is also contrary to the U.S. Department of Justice's adamant assertions elsewhere that APA inaction claims are *not* resolved on an administrative record. *See Varghese v. Blinken*, 2022 WL 3016741, at *2 n.3 (D.D.C. July 29, 2022) ("The government maintains that [the required submission of a certified list of the administrative record] does not apply because this case concerns 'agency inaction, not agency action.' The Court agrees with the government. Because the agency here allegedly 'failed to act, there is no administrative record for a federal court to review.'") (cleaned up); *Arab v. Blinken*, ___ F. Supp. 3d ___, 2022 WL 1184551, at *4 n.2 (D.D.C. Apr. 21, 2022) (same); *Thakker v. Renaud*, 2021 WL 1092269, at *5 n.10 (D.D.C. Mar. 22, 2021) (same); *Desai v. USCIS*, 2021 WL 1110737, at *5 n.7 (D.D.C. Mar. 22, 2021) (same); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 n.6 (D.D.C. 2021) (same). It seems the federal government's position changes based on whether it suits the particular litigation. But the government cannot have it both ways.

Defendants' decision to file an Answer in this case, rather than a motion to dismiss, also demonstrates that the issues in this case are factual in nature, confirming the need for discovery on Plaintiffs' APA inaction claim.

Discovery is warranted for yet an additional reason: There is evidence of Defendant Food & Drug Administration ("FDA") engaging in improper behavior by sending a 15-page single-spaced "Request for Information" to Plaintiff AHCA (copy attached as Exhibit A). The timeline of FDA's interactions with Plaintiffs demonstrates the extremely unusual timing of this RFI. Florida's SIP Proposal was originally submitted in November 2020, and it contained all necessary information, except for details about the foreign seller that would obtain prescription drugs in Canada and resell them to Florida. Am. Compl. ¶ 49, ECF No. 7. The FDA's own regulations allow the foreign seller information to be submitted up to six months after the proposal itself, 21 C.F.R. § 251.4, and Florida submitted that last piece of information in April 2021. Am. Compl. ¶ 52, ECF No. 7. In August and November 2021, the FDA asked several minor clarifying questions, which Plaintiffs promptly answered. *Id.* ¶¶ 57–58.

Since then, for an entire year, the FDA has made no further requests for information from Plaintiffs, despite Florida officials persistently asking the FDA for progress on evaluating Florida's SIP Proposal. *Id.* ¶¶ 55, 59–72. Yet on the eve of the parties filing the Case Management Report with this Court, the FDA apparently decided there are actually dozens of items missing from Florida's SIP Proposal. The RFI seeks to deflect attention from Defendants' extensive delay by purporting to put the ball back in Plaintiffs' court.

7

Moreover, suddenly conjuring so many supposed defects after nearly two years—during which time the FDA sought only minor clarifications—strongly suggests a desire by Defendants to avoid judicial scrutiny of their inaction and suggests the agency recognizes its delay has been unreasonable.

A review of the RFI confirms that it is a stall tactic. Many of the requests are the direct result of the FDA's own dilatory behavior, which has led to outdated information (e.g., "The SIP Sponsor is encouraged to adopt more recent price and utilization data and to provide data covering a longer time period."; "Repacker/relabeler registration included in the SIP Proposal is expired."; "Please ensure that your proposed labeling is based on the most recent version of the FDA-approved labeling."; "Please provide the current ISO 17025 accreditation certificates for the four laboratories identified in the SIP Proposal."; "[P]lease submit the latest version of the FDA-approved labeling….").

Other requests in the RFI generically ask Florida to "describe" or "provide" information about compliance with certain requirements but provide no explanation for why prior submissions were inadequate. Another asks for information from the "Orange Book," which is the FDA's *own* publication and thus is easily available to the FDA. Although other requests provide more specifics, it is unclear why it took the FDA so long to make these inquiries based on materials submitted by Florida long ago—unless, of course, the FDA's

8

goal all along has been to stall as long as possible. Moreover, the RFI does not even state that it is an exhaustive list, meaning the FDA could keep this process going indefinitely to give the false appearance of making progress on Florida's SIP Proposal.

If the FDA truly believed any of this information was necessary, the FDA would have asked for it a year ago. By waiting to send this list only after Plaintiffs sued and on the eve of the parties filing their Case Management Report, the FDA's actions indicate that it is trying to avoid scrutiny of its nearly two-year-long delay in adjudicating Florida's SIP Proposal.

Defendants argue that a strong showing of bad faith is required to obtain discovery in an APA case, but that is only in final agency action cases, where (as discussed above) courts generally cannot substitute their own judgment for the agency's, and thus inquiries into final agency actions and thought processes are generally disfavored. *See PEACH*, 87 F.3d at 1246. But that is not the rule in agency inaction cases, where a court must evaluate the propriety of an agency's delay. Under the *TRAC* factors used to evaluate agency delay and inaction cases, improper agency behavior is not required, but its presence is a strong indication of unreasonable agency delay, *see TRAC v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984), and thus it is fair game for discovery in an agency inaction case like this one.

For all these reasons, discovery is appropriate on Plaintiffs' agency inaction claim, and Plaintiffs have already begun the discovery process to ensure it does not delay the resolution of this matter. In particular, on October 25, Plaintiffs served interrogatories, requests for production, and requests for admissions on Defendants (these documents were also served via certified mail sent October 27); and on November 15, Plaintiffs served initial disclosures on Defendants.

## II. Plaintiffs' Discovery Requests Seek Information Targeting the *TRAC* Factors.

Defendants challenge the relevance of only a small handful of the discovery requests Plaintiffs served. *See* ECF Nos. 29-1, 29-2, 29-3. Defendants argue that these few requests seek "immaterial" information that is "not discoverable" because it "explore[s] the mindset and inner workings of agency officials." Motion 15, ECF No. 29. This implicitly concedes the relevance of the other discover requests. But Defendants are also wrong about the few requests to which they object, which seek only factual information directly relevant to the *TRAC* factors used to determine whether agency action has been unreasonably delayed.[3]

---

[3] The *TRAC* factors are: (1) "the time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when

For example, Defendants suggest that agency records reflecting or referencing "whether additional information is needed to evaluate [Florida's SIP] proposal" is irrelevant or will probe officials' "mindset," Motion 14, ECF No. 29 (citing Request for Production 4), but whether Defendants genuinely need more information from Plaintiffs for review of Florida's SIP Proposal—or instead have largely been stalling for nearly two years—is directly relevant to the *TRAC* factors subjecting agency inaction to "a rule of reason," *TRAC*, 750 F.2d at 80, looking to whether there has been "impropriety," *id.*, and also inquiring into whether "human health and welfare are at stake," *id.*

Defendants likewise label as immaterial an interrogatory asking for a list of steps they have taken "to implement Executive Order 14036's directive that defendants work with states to develop Section 804 prescription drug importation programs." Motion 15, ECF No. 19 (quoting Interrogatory 11). Defendants do not explain how a listing of historical facts could probe officials' "mindset," and, in any event, Defendants' *bona fide* implementation (or not) of that Executive Order speaks directly to the *TRAC* factors asking about impropriety and subjecting an agency to a "rule of reason" analysis. If the FDA

---

human health and welfare are at stake"; (4) "the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80.

is not implementing the sitting President's own directive for these prescription drug reimportation proposals, it is strong evidence that the FDA is not conducting its review of Florida's SIP Proposal in a reasonable manner.

Defendants also object to an interrogatory asking for a list of drugs the FDA has "diverted into the U.S. market" to alleviate or mitigate drug shortages, Motion 15, ECF No. 29 (quoting Interrogatory 14), but again a listing of historical facts does not "explore the mindset and inner workings of agency officials," *id.* at 15. The material is relevant because the FDA has suggested that its delay is partially due to a lack of information about the safety of prescription drugs imported from Canada, *see* RFI 10, ECF No. 27-1, but that explanation would be demonstrably unreasonable and improper if the FDA is routinely authorizing drugs to be imported from Canada pursuant to other programs. If Defendants are suggesting that this interrogatory is irrelevant because they in fact have no safety concerns about Florida's SIP Proposal, then Plaintiffs would be willing to withdraw the interrogatory in exchange for a short stipulation on the matter from Defendants.

The propriety and relevance of the information and documents sought by Plaintiffs' discovery requests is confirmed by the fact that Defendants muster only these unpersuasive objections to a handful of discovery requests. Discovery in this case would thus be beneficial for the Court's review of Defendants' inaction and delay under the *TRAC* factors. If Defendants object

to specific discovery requests, the proper course would be to timely lodge those objections and confer with Plaintiffs, rather than file a motion for a protective order asking for the preclusion of all discovery.

Finally, Defendants contend that a forthcoming administrative record "may" prove adequate, Motion 11, ECF No. 29, recognizing the distinct possibility it will not. This concession is reinforced by Defendants' contention that even those discovery requests directly relevant to *TRAC* factors allegedly seek information that is "immaterial," *id.* at 15, making it clear that Defendants' administrative record will not include the information the Court needs for its review under the *TRAC* factors. Accordingly, discovery is not just appropriate but also necessary.

### III. Plaintiffs' Discovery Requests Were Not Premature.

In passing, Defendants suggest that Plaintiffs' discovery requests were premature, *see* Motion 8 n.2, ECF No. 29, but Defendants served their discovery requests nearly a week after the Rule 26(f) conference, which traditionally marks the beginning of discovery in this Court, *see, e.g., Taser Int'l, Inc. v. Phazzer Electr., Inc.*, No. 6:16-cv-366, 2022 WL 1238472, at *2 (M.D. Fla. Feb. 16, 2022) ("Discovery is normally barred prior to a Rule 26(f) conference."); *see also* Case Management Report, ECF No. 27 at 1 (Rule 26(f) conference held October 19); ECF No. 29-1 at 10, ECF No. 29-2 at 8, ECF No. 29-3 at 9 (discovery requests served on October 25).

13

It appears Defendants believe the parties' October 19 case management conference was not a Rule 26(f) conference, but the Case Management Report—the substance of which consumed nearly the entirety of that conference—expressly says it is being submitted "under Rule 26(f)(2)," ECF No. 27 at 10, which provides the required "content" for a Rule 26(f) conference.

Because Plaintiffs' discovery requests were served after the Rule 26(f) conference, they were not premature.

## IV. A Protective Order Is an Improper Remedy.

For several reasons, there is no need for the drastic relief of a protective order preemptively shutting down the normal discovery process in this case.

*First*, Defendants can show no harm from Plaintiffs' discovery requests. "'Generally, a party moving for a protective order must make a specific demonstration of facts in support of the request, as well as of the harm that will result without a protective order.'" *Gov't Emps. Ins. Co. v. Glassco Inc.*, No. 8:19-cv-1950-KKM-JSS, 2020 WL 13357816, at *2 (M.D. Fla. July 31, 2020). On November 15, Plaintiffs offered to extend the discovery response deadline if Defendants needed additional time to prepare substantive responses, but Plaintiffs stated that if Defendants objected to discovery altogether, they should lodge a "timely objection." Defendants remain free to serve objections to any discovery requests they believe are inappropriate. But Defendants instead chose to seek a protective order even though the Court may resolve the

14

parties' discovery disputes at the December 13 conference. Nor have Plaintiffs indicated that they intend to move to compel responses or serve additional requests before the December 13 conference. Without any harm, Defendants are not entitled to a protective order.

*Second*, even if the Court declines to authorize certain discovery requests at the December 13 hearing, other discovery requests may be appropriate, and it would be improper to preemptively preclude Plaintiffs from serving *any* discovery requests for the entirety of the litigation, as Defendants request. Rather, the appropriate mechanism for resolving such disputes, should they arise, is for Defendants to timely object and then consult with Plaintiffs, who may then choose to move to compel responses (or not). That is the standard mechanism for addressing discovery disputes. It is unnecessary and inappropriate to seek a protective order shutting down all discovery at this early stage.

## CONCLUSION

The Court should deny Defendants' motion for a protective order.

Dated: December 1, 2022

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

/s/ James H. Percival
James H. Percival* (FBN 1016188)
DEPUTY ATTORNEY GENERAL OF LEGAL POLICY

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Natalie Christmas (FBN 1019180)
ASSISTANT ATTORNEY GENERAL OF LEGAL POLICY

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com
* Lead Counsel

*Counsel for the State of Florida*

/s/ R. Trent McCotter
C. Boyden Gray (*pro hac vice*)
R. Trent McCotter (*pro hac vice*)*
Jared M. Kelson (*pro hac vice*)
BOYDEN GRAY & ASSOCIATES, PLLC
801 17th St. NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com
* *Lead Counsel*

ANDREW T. SHEERAN
Acting Deputy General Counsel
Chief Litigation Counsel
Florida Bar I.D. No. 0030599
Andrew.Sheeran@ahca.myflorida.com
Agency for Health Care Administration
2727 Mahan Drive, Mail Stop #3
Tallahassee, Florida 32308
(850) 412-3670

*Counsel for Agency for Health Care Administration*

# CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2022, I filed the foregoing via the Court's CM/ECF system, which will serve all counsel.

*/s/ R. Trent McCotter*
R. TRENT MCCOTTER
