## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

State of Florida, *et al.*,

      Plaintiffs,

      v.

Food and Drug Administration, *et al.*,

      Defendants.

Case No. 8:22-cv-01981-TPB-JSS

## Defendants' Opposition to Plaintiffs' Motion to Compel Discovery Responses

Plaintiffs' (collectively, "Florida" or "the State") Administrative Procedure Act ("APA") claim must be resolved according to the APA framework. To go beyond the administrative record and engage in extra-record discovery, Florida bears the heavy burden of showing this case fits one of the rare circumstances recognized by the Supreme Court and Eleventh Circuit. This burden cannot be satisfied by assertions in a brief; it must be borne with evidence.

Florida's motion to compel does not even acknowledge, much less purport to meet, the requisite heavy burden. Far from being so bare as to frustrate judicial review, the 4,616-page record permits the Court to determine whether FDA has unreasonably delayed agency action on Florida's Section 804 Importation Program ("SIP") proposal. The record reveals what FDA has done, how long the

agency has taken, and why it has not yet ruled on the proposal. And Florida's baseless suspicions of impropriety cannot undermine the record's adequacy. The State's failure to carry its heavy burden warrants denial of this motion.

Even if Florida could justify extra-record discovery, the individual discovery requests covered by this motion are unenforceable. These requests, on their face, are overly broad and seek irrelevant information or information already contained in the record. At bottom, the State asks this Court for a license to go fishing in the files of FDA and HHS. Neither the law nor the facts authorize such an excursion. This motion to compel should be denied.

## BACKGROUND

On August 31, 2022, Florida filed the Amended Complaint, alleging that FDA has unreasonably delayed a ruling on Florida's SIP proposal.[1] *See* Am. Compl., ECF No. 7, at ¶¶ 86–103. Before Defendants' answer deadline—and well before Defendants produced the administrative record—Florida sought discovery, *see* Ex. A, Pls.' Interrog., ECF No. 46-1; Ex. B, Pls.' Req. for Produc., ECF No. 46-2; Ex. C, Pls.' Req. for Admis., ECF No. 46-3.

On December 13, 2022, this Court ruled that "[t]he presumptive limit on the scope of discovery in agency actions (including agency inaction cases) is the

---

[1] The Amended Complaint also alleges two claims under the Freedom of Information Act. These claims are subject to special handling, *see* Case Mgmt. Order, ECF No. 44, at ¶ 2, and are not relevant to the motion to compel.

administrative record." Endorsed Order, ECF No. 34. Consistent with the APA framework, the Court also noted that "Plaintiffs *may* be entitled to discovery on their agency inaction claim *depending upon the circumstances*." *Id*. (emphases added). It ordered Defendants to produce the record by December 30, 2022, *id.*, which they did, filing the certified record of 4,616 pages, *see* AR, ECF Nos. 37–42.

Among the record documents is FDA's November 2022, 15-page letter to Florida, which contained the findings of "numerous subject matter experts at FDA and other components of HHS," who "carefully and thoroughly reviewed" the proposal. AR 4602–16.[2] The letter catalogued numerous deficiencies in core aspects of the proposal and requested further information from the State. *See id.* Florida has not yet responded to the letter.

Only a few days later, on January 6, 2023, Florida sent additional, broader discovery requests. The State demanded any record possessed by anyone in FDA or HHS "reflecting or referencing" the terms "DeSantis" or "phrma,"[3] regardless of date or subject matter. Ex. E, Pls.' Req. for Produc. No. 8, ECF No. 46-5. Rank and file agency employees also did not escape the State's crosshairs; Florida demanded their time sheets and personal financial information. Pls.' Req. for Produc. No. 6; Ex. D, Pls.' Interrog. No. 24, ECF No. 46-4.

---

[2] "AR" denotes record citations with pincites to the Bates numbered page.
[3] PhRMA stands for Pharmaceutical Research and Manufacturers of America, a pharmaceutical industry trade association.

3

On January 17, 2023, Florida filed a Motion to Compel Discovery Responses to all but one of its 43 discovery requests. *See* Pls.' Mot., ECF No. 46. Interrogatory No. 4—which had asked: "What reasons, if any, prevent defendants from adjudicating Florida's SIP Proposal?"—was "voluntarily withdrawn" in light of FDA's November 2022 letter. Pls.' Mot. 3 n.4; Pls.' Interrog. No. 4. This withdrawal acknowledges that, through the November 2022 letter, Florida knows why the agency has not authorized Florida's proposal. Nonetheless, the State insists upon extra-record discovery on its APA claim and Defendants now oppose the attempt.

ARGUMENT

I.   **Florida has not met the heavy burden necessary to compel extra-record discovery**

   A. **Florida improperly circumvents the governing APA framework**

At the outset, Defendants assume the task, neglected by Florida in its motion, of reciting the legal framework governing extra-record discovery. In APA challenges, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) (internal citation omitted). Section 706 makes the "focal point" for review "the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light*, 470

4

U.S. at 743 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam)); *see Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2573 (2019); *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) ("*PEACH*").

Because "a court conducting judicial review is not 'generally empowered'" to go "beyond the administrative record," *PEACH*, 87 F.3d at 1246, "discovery outside the record is normally unavailable in APA cases," *Marllantas, Inc. v. Rodriguez*, 806 F. App'x 864, 867 (11th Cir. 2020). That is true in this case. *See* Endorsed Order, ECF No. 34 ("The presumptive limit on the scope of discovery in agency actions (including agency inaction cases) is the administrative record."). The Court may go beyond the certified record only in "certain circumstances," *PEACH*, 87 F.3d at 1246, which are "narrowly construed," *Ala.-Tombigbee Rivers Coal. v. Norton*, No. CIV.A.CV-01-S-0194-S, 2002 WL 227032, at *3 (N.D. Ala. Jan. 29, 2002) (quoting *United States v. Amtreco, Inc.*, 806 F. Supp. 1004, 1006 (M.D. Ga. 1992)); *see also* Endorsed Order, ECF No. 34 ("Plaintiffs *may* be entitled to discovery on their agency inaction claim *depending upon the circumstances*.") (emphases added).

In the Eleventh Circuit, such circumstances exist, at most, where "(1) an agency's failure to explain its action effectively frustrates judicial review; (2) it appears that the agency relied on materials not included in the record; (3)

technical terms or complex subjects need to be explained; or (4) there is a strong showing of agency bad faith or improper behavior." *PEACH*, 87 F.3d at 1246 n.1. More recent decisions indicate that the only qualifying circumstance is the fourth. *See Marllantas*, 806 F. App'x at 867 ("The district court may order discovery beyond the administrative record *only* when there is a strong showing of bad faith or improper behavior by the agency.") (emphasis added) (internal quotation marks omitted); *Ala.-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007) (similar).

As "the party seeking discovery," Florida "has 'a heavy burden to show that [extra-record discovery] is necessary.'" *Ala.-Tombigbee Rivers Coal.*, 2002 WL 227032, at *3 (quoting *Amtreco*, 806 F. Supp. at 1006); *see SOSS2, Inc. v. U.S. Army Corps of Eng'rs*, 403 F. Supp. 3d 1233, 1239 (M.D. Fla. 2019). This burden can be borne only through actual evidence, *not* mere "assertions in [a] brief." *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676 (11th Cir. 2020). And the Court may not authorize discovery before conducting its own "comprehensive review of the administrative record." *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 915 F. Supp. 378, 383–84 (N.D. Ga. 1995); *see Morales*, 799 F. App'x at 676 (looking at "[t]he record" to determine whether the "circumstances" for extra-record evidence "exist here"). Otherwise, the discovery order would be "premature" and erroneous. *Dep't of Comm.*, 139 S. Ct. at 2574.

None of the authorities cited by Florida permit circumvention of these requirements. *See* Pls.' Mot. 7–8. This Court's December 13 Order remained faithful to Supreme Court and Eleventh Circuit precedent by observing that extra-record discovery was conditional: "Plaintiffs *may* be entitled to discovery on their agency inaction claim *depending on the circumstances.*" Endorsed Order, ECF No 34 (emphases added). It now is incumbent on Florida to prove that this case presents one of those rare circumstances.

Florida attempts to support its position by relying on *Tribe v. Bureau of Land Management*, No. 2:19-CV-2483 KJM AC, 2022 WL 1778525 (E.D. Cal. June 1, 2022), and *Tailawal v. Mayorkas*, No. LA CV 22-01515-SPG-RAO, 2022 WL 4493725 (C.D. Cal. Aug. 18, 2022). Pls.' Mot. 8. However, *Tribe* stated that "agency inaction cases are not categorically exempt from the general administrative record exception to discovery, which applies presumptively." *Id.* at *4. Its further observation "that limited discovery is permissible in some cases in which review is ordinarily constrained to the administrative record"—specifically, those four narrow circumstances discussed above—hardly offers the carte blanche Florida claims. *Id.* at *5. And *Tailawal* simply declined to engage in "the *TRAC* factor analysis . . . at the pleading stage," denying a motion to dismiss as "premature." 2022 WL 4493725, at *4. Unlike in *Tailawal*, this case is beyond the pleading stage and the Court has the benefit of the thousands of pages in the record.

**B.  None of the rare circumstances for extra-record discovery are present**

Florida's motion fails to both recite and apply the legal framework governing extra-record discovery. Nonetheless, Florida's various filings appear to suggest that the State believes two circumstances for extra-record discovery apply here: (1) "when 'an agency's failure to explain its action effectively frustrates judicial review'" and (2) "when 'there is a strong showing of agency bad faith or improper behavior.'" *Morales*, 799 F. App'x at 676 (quoting *PEACH*, 87 F.3d at 1246 n.1). Florida has not met its heavy burden of showing either exists.

**1.  FDA's administrative record enables judicial review**

This is not "the rare case in which the record is so bare as to frustrate effective judicial review." *Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990). On the contrary, the record here enables review because FDA's "path may reasonably be discerned." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

The State's APA claim presents a straightforward question: Should this Court "compel" FDA to rule on Florida's SIP proposal because that ruling has been "unlawfully withheld or unreasonably delayed?" 5 U.S.C. § 706(1). The record here allows the Court to reasonably discern:

- the nature of the administrative process for SIP proposals, *see* 21 C.F.R. pt. 251; Final Rule, 85 Fed. Reg. 62,094 (Oct. 1, 2020); AR 29–266, 273–401, 4455–4580 (iterations of Florida's SIP proposal);

- FDA's communications to Florida, which reflect the agency's efforts to date on Florida's proposal, *see* AR 267–69, 402–04, 4590–92, 4602–16;

- the length of time taken by the agency, *see id.*; and

- the deficiencies in the proposal that prevent FDA from authorizing it, *see* AR 4602–16 (FDA's November 2022 letter).[4]

Armed with this record, the Court is able to rule—either for or against Florida—on the merits of the State's APA claim. *See, e.g., Olsen v. United States,* 414 F.3d 144, 155 (1st Cir. 2005) (holding that "[t]he present record . . . was adequate for [judicial] review" because it contained the plaintiff's "offer, his responses and lack thereof to the [agency's] requests, and the [agency's] conclusions"); *Donjon-SMIT, LLC v. Schultz,* No. 2:20-CV-011, 2020 WL 1666073, at *6 (S.D. Ga. Apr. 3, 2020) (finding that plaintiff "did not clearly or specifically show how . . . the administrative record does not tell the full story of [the agency's] deviation decision and rationale" without extra-record evidence); *Int'l Jr. Coll. of Bus. & Tech., Inc. v. Duncan,* 937 F. Supp. 2d 202, 205 (D.P.R. 2012)

---

[4] Florida acknowledged it knows the agency's position when it withdrew the interrogatory on this point. Pls.' Mot. 3 n.4; Pls.' Interrog. No. 4.

(denying extra-record discovery because the "record's documentation of the contemporaneous communications and rationale suffices to take this case out of the realm of a 'failure to explain administrative action so as to frustrate judicial review'") (internal citation omitted).

By contrast, this case is a far cry from *Tribe* to which the State looks for support. Pls.' Mot. 7–8. In *Tribe*, the record did not address "any . . . of the predicate material facts that underlie [the plaintiffs'] claims" and many documents were "incomprehensible to a non-agency reader." 2022 WL 1778525, at *5–6. Further, the government did "not directly address the contents of the proposed interrogatories or make any arguments as to why the administrative record is sufficient to address the issues." *Id.* at *5. Here, Defendants have directly addressed the contents of Florida's discovery requests and explained how the record—which includes FDA's detailed November 2022 statement about why it has not authorized the proposal—*is* sufficient to address the APA claim.

More fundamentally, Florida's position on the record suffers from three critical flaws. *First*, the State repeatedly misrepresents the contents of the record. When characterizing the difference between the record "and the attachments to the Amended Complaint," Pls.' Mot. 8, Florida disregarded FDA's critical November 2022 letter, *see* AR 4602–16. Then the State argued that the "record *should* have already included" documents about FDA's efforts to communicate

missing information per 21 C.F.R. § 251.4(c), Pls.' Mot. 10–11, which the record already *does* contain, *see* AR 267–69, 402–04, 4590–92, 4602–16.

*Second*, Florida misstates the operative test for extra-record discovery. The test is not, as the State suggests, whether the record includes "new information" beyond the exhibits to the pleadings or whether a plaintiff can conceive of extra-record evidence that may be "relevant to the *TRAC* factors" or "useful." Pls.' Mot. 8–9, 11; *see Sierra Club v. U.S. Fish & Wildlife Serv.*, No. 2:20-CV-13-SPC-NPM, 2021 WL 4478329, at *5 (M.D. Fla. Sept. 30, 2021) (rejecting request for discovery that allegedly would "help the Court evaluate the [agency's] actions"), *objections overruled*, No. 2:20-CV-13-SPC-NPM, 2021 WL 5634131 (M.D. Fla. Dec. 1, 2021); *Donjon-SMIT*, 2020 WL 1666073, at *6 (rejecting request for discovery where plaintiff "did not clearly or specifically show how—without these . . . records—the administrative record does not tell the full story"). According to the Eleventh Circuit, the bar for discovery in an APA case is much higher. As relevant here, this Court must find that the agency's "failure to explain its action effectively frustrates judicial review." *Morales*, 799 F. App'x at 676 (quoting *PEACH*, 87 F.3d at 1246 n.1).

To conclude that this record is not "so bare as to frustrate effective judicial review" of FDA's conduct, *Cmty. for Creative Non-Violence*, 908 F.2d at 998, the Court need only consult Defendants' summary judgment motion, which fully

analyzed the APA claim. *See* ECF No. 45. The discussion of the *TRAC* factors in Florida's motion confirms the point. Based on FDA's November 2022 letter, the State voluntarily withdrew the interrogatory about "what reasons, if any, prevent defendants from adjudicating Florida's SIP Proposal"—the issue at the very heart of the APA claim, and thus central to the first *TRAC* factor. Pls.' Interrog. No. 4; Pls.' Mot. 3 n.4. The State also argued, under the second *TRAC* factor, "how long the review process should take." Pls.' Mot. 14. As for the State's arguments about "overspending millions of dollars on prescription drugs" and that "Floridians' safety is on the line" (issues Florida contends are further relevant to the *TRAC* factors), Pls.' Mot. 16, one would expect *the State* to possess any supporting evidence, *not* FDA and HHS.

   *Third*, the State attempts to recast merits arguments as areas for discovery. Florida argues that the record does not justify "why Defendants sat on Plaintiffs' SIP Proposal for nearly two years." Pls.' Mot. 9. Although Defendants dispute that characterization of the record, in such cases, the lack of "an adequate justification . . . is not a sufficient reason to authorize Florida to supplement the record" through extra-record discovery. *Florida v. United States*, No. 3:21CV1066-TKW-EMT, 2022 WL 2431442, at *2 (N.D. Fla. June 6, 2022). Rather, "an inadequate or incomplete administrative record" would simply "work in Florida's favor" on the merits. *Id.* Likewise, when rejecting, as "unreasonable,"

FDA's position that the proposal has "incomplete information about the cost savings," Pls.' Mot. 13, the State simply "repackages" a merits argument, which does not "meet the heavy burden necessary to warrant supplementation of the administrative record," *Altamaha Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, No. CIVA CV206-186, 2007 WL 1830864, at *3 (S.D. Ga. June 21, 2007); *see Florida*, 2022 WL 2431442, at *2.

### 2.  Florida has not shown bad faith or impropriety

Florida's last hope for discovery is to make "a strong showing of agency bad faith or improper behavior." *Marllantas*, 806 F. App'x at 867 (quoting *Dep't of Comm.*, 139 S. Ct. at 2573–74); *see Ala.-Tombigbee Rivers Coal.*, 477 F.3d at 1262. This burden cannot be satisfied by bare "assertions in [a] brief;" instead, "the record" must "reflect that any such circumstances exist here." *Morales*, 799 F. App'x at 676; *see Bark v. Northrop*, 2 F. Supp. 3d 1147, 1153 (D. Or. 2014). Offering only suspicion and unsupported speculation, Florida falls well short of the required showing.

Florida alleges that FDA is "[p]rotecting the interests of pharmaceutical companies," Am. Compl. ¶ 101, so it wants personal financial information for agency employees to check "potential financial and political conflicts," Pls.' Mot. 19–20. But "[c]ounsel's assertions are insufficient to create the record necessary to infer there was bad faith conduct" to warrant discovery. *Ali v. Pompeo*, No. 16-

CV-3691-KAM-SJB, 2018 WL 2058152, at *6 (E.D.N.Y. May 2, 2018). Absent "strong evidence" to back up its speculation, *Ala.-Tombigbee Rivers Coal.*, 2002 WL 227032, at *5, Florida's bare suspicion cannot justify extra-record discovery, *see Ali*, 2018 WL 2058152, at *6 (concluding "that discovery should not be permitted" based on "conclusory *ipse dixit* . . . allegations of bad faith conduct"); *Ala.-Tombigbee Rivers Coal.*, 2002 WL 227032, at *5.

The State's equally baseless contention that FDA's November 2022 letter was "gamesmanship" also does not justify discovery. Pls.' Mot. 18. The record directly refutes Florida's characterization of the letter as "*ex post* activity." *Id.* 17. FDA alerted Florida to the upcoming request for information two months *before* Florida filed suit. *See* AR 4598–4600. Due to its consideration of "a number of complicated issues" in Florida's proposal, AR 4598 (which are reflected in the agency's ultimate letter, *see* AR 4602–16), the agency simply needed time to move through its process.

Much of the State's perception of bad faith stems from a misreading of the September 2020 certification issued by the HHS Secretary. *See* Ex. 2, Am. Compl., ECF No. 7-2. According to Florida, the certification establishes both an "official presumption that SIP proposals will save costs" and an "official agency presumption" about the safety of "importing and relabeling . . . drugs," such that authorization of a proposal should not be held up on these grounds. Pls.' Mot.

14

13, 15. Actually, the certification stated that the Secretary's determinations about public health and safety and cost savings were contingent on "*the implementation of* [21 U.S.C. § 384(b)–(h)] *through the final rule* Importation of Prescription Drugs"—that is, through SIPs that cleared FDA's "review and authorization." ECF No. 7-2, at 2 (emphases added). SIP sponsors must "*demonstrate* that *their importation program* will pose no additional risk to the public's health and safety" and "*explain* how they will ensure *their* program will result in a significant reduction in the cost of covered products to the American consumer." 85 Fed. Reg. at 62,094 (emphases added).

Previously, Florida understood what the certification does and does not accomplish. *See* Fla. Amicus Br., ECF No. 28, at 17, *Pharm. Res. & Mfrs. of Am. v. HHS*, No. 1:20-cv-03402-TJK (D.D.C. June 1, 2021) ("Whether or not individual States take the opportunity to develop programs that comply with the safety and saving requirements of the Final Rule is not a defect of the certification of the Final Rule . . . ."). "FDA will engage in a fulsome review process of individual States' SIP plans," and "a State's ability to ensure safety is an essential element of the SIP approval process." *Id.* 23. Thus, far from enjoying a presumption, Florida bears the evidentiary burden to show that its proposal "meets the requirements of" 21 C.F.R. Part 251, 21 C.F.R. § 251.4, including all regulatory conditions targeting public health and safety and cost savings, *see id.* § 251.3(d)–(e).

Accordingly, Florida's theory that FDA's November 2022 letter was "a contrived rationale," Pls.' Mot. 13, rests on a false premise.

At bottom, Florida "falls woefully short of showing at all—much less 'strongly' showing—that defendants acted in bad faith or engaged in improper behavior." *Ala.-Tombigbee Rivers Coal.*, 2002 WL 227032, at *4; *see, e.g.*, *Donjon-SMIT*, 2020 WL 1666073, at *6–7 (denying extra-record discovery because plaintiff lacked "concrete evidence" of "bad faith"); *Bark*, 2 F. Supp. 3d at 1153 (prohibiting plaintiffs from "pursu[ing] their discovery requests" based on a "conclusory allegation" of "bad faith"); *Ali*, 2018 WL 2058152, at *6. The State's requests for extra-record discovery should be denied.

## II.  On their face, Florida's discovery requests should not be enforced

Assuming that Florida could meet the heavy burden for extra-record discovery, the State's discovery requests are facially unenforceable. "Rule 26 is not an unlimited license for fishing expeditions." *Belcher v. A & M Bus. Props., Inc.*, No. 8:10-CV-02898-23AEP, 2015 WL 4527575, at *3 (M.D. Fla. July 27, 2015). Florida "bears the initial burden of proving that the information sought is relevant." *Bright v. Fix*, No. 8:12-cv-1163-T-35MAP, 2016 WL 1011441, at *1 (M.D. Fla. Jan. 22, 2016). The rule does not permit discovery of "irrelevant" information, *Com. Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984), or "overly broad" requests that would impose disproportionate burdens, *R.M.R.* ex

rel. *P.A.L. v. Muscogee Cnty. Sch. Dist.*, 165 F.3d 812, 816–17 (11th Cir. 1999). Yet irrelevant and overly broad describes Florida's requests.

*First*, Florida's use of discovery as a fishing expedition is encapsulated by its recent request for any record possessed by anyone at FDA or HHS "reflecting or referencing any of" the terms "DeSantis," "Marstiller," "Weida," or "phrma," regardless of date or subject matter. Pls.' Req. for Produc. No. 8. This "boundless and indefinite request" for agency documents "is facially deniable." *SOSS2*, 403 F. Supp. 3d at 1239; *see Robinson v. McNeese*, No. 5:20-CV-00160-TES, 2021 WL 232672, at \*5 (M.D. Ga. Jan. 22, 2021) (denying motion to compel "requests for production" that "are extraordinarily broad in both scope and time").

*Second*, many requests are duplicative of information already in the record. *See* Fed. R. Civ. P. 26(b)(2)(C). Specifically, the record reflects the steps FDA has taken on Florida's proposal, *see* Pls.' Interrog. No. 3; the information FDA believes missing and its communication of those views, *see id.* Nos. 7–10, 20; Pls.' Req. for Produc. No. 3; the issues in Florida's proposal that FDA was considering while preparing the November 2022 letter, *see* Pls.' Interrog. No. 13; the drugs

Florida wishes to import, *see* Pls.' Req. for Admis. Nos. 1–2; and the responsible FDA offices, *see id.* Nos. 7-9.[5]

*Third*, Florida requests all "[r]ecords reflecting or referencing Florida's SIP Proposal or desire to import prescription drugs," as well as all "drafts of" the November 2022 letter. Pls.' Req. for Produc. Nos. 4, 7; *see also* Pls.' Interrog. Nos. 16–19, 22–23. The record already contains the documents FDA considered while reviewing Florida's proposal. The State cannot probe the agency's process through requests for "predecisional documents," which "are 'immaterial'" in APA cases and thus "not 'discoverable.'" *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)); *see Sierra Club*, 2021 WL 4478329, at *5 (following *Ross* and holding that "deliberative-process documents are immaterial, undiscoverable"); *see also Dall. Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 541 (D.D.C. 2021) (rejecting plaintiff's attempt "to delve into the agency's subjective motivation and internal decision-making process via depositions and deliberative documents"). Florida's insistence on a privilege log is similarly meritless. *See* Pls.' Mot. 20–21. Because "irrelevant material is not

---

[5] Other requests, *see* Pls.' Interrog. Nos. 5-6; Pls.' Req. for Produc. No. 2, seek information that would be in the record if it existed, had been "considered" by FDA, and was properly part of the record. *Transp. Div. v. Fed. R.R. Admin.*, 10 F.4th 869, 878 (D.C. Cir. 2021); *see also Ga. Aquarium, Inc. v. Pritzker*, 134 F. Supp. 3d 1374, 1377 (N.D. Ga. 2014) (agency "entitled to a strong presumption" that "it properly designated the . . . record").

discoverable," "a privilege log is not required." *Donjon-SMIT*, 2020 WL 1666073,

at *7; *see, e.g.*, *Sierra Club*, 2021 WL 4478329, at *5.

    *Fourth*, the State demands identification of "all individuals" at FDA or HHS

"who are involved in reviewing or have reviewed Florida's SIP proposal,"

organization charts, and any "timekeeping records." Pls.' Interrog. Nos. 1, 2, 21;

Pls.' Req. for Produc. Nos. 1, 6. However, APA review focuses on the agency

"decisionmaker," not "individual agency employee[s]." *Serono Labs., Inc. v.

Shalala*, 158 F.3d 1313, 1321 (D.C. Cir. 1998); *see* AR 4616. Thus, the requested

information is irrelevant. *See Sierra Club v. U.S. Dep't of Energy*, 26 F. Supp. 2d

1268, 1271–72 (D. Colo. 1998) (declining to permit discovery, in APA action, into

"the identities of agency personnel and all related documents involved with the

decisions made"); *see also Bldg. Materials Corp. of Am. v. Henkel Corp.*, No. 6:15-CV-

548-ORL-22GJK, 2016 WL 7734066, at *2 (M.D. Fla. Aug. 26, 2016).

    *Fifth*, several requests relate to the State's theory of industry influence, which

was debunked above. *See* Pls.' Interrog. Nos. 24; Pls.' Req. for Produc. No. 8–9.

Again, the State's mere belief that these documents "*may* show pretext" is

insufficient to show relevance. *Benz v. Crowley Logistics, Inc.*, No. 3:15-CV-728-J-

25MCR, 2016 WL 11587289, at *3 (M.D. Fla. June 17, 2016). Florida simply "is not

permitted to make such speculative allegations" about improper influence "in

hopes of mounting a fishing expedition." *McSmith v. Unite Here Loc. 23*, No. 1:18-CV-4233-SCJ, 2020 WL 10692451, at *3 (N.D. Ga. May 19, 2020).

*Sixth*, discovery about the implementation of Executive Order 14,036, *see* Pls.' Interrog. No. 11; Pls.' Req. for Admis. No. 10, exceeds the scope of a 5 U.S.C. § 706(1) claim, which "precludes . . . broad programmatic attack[s]" and "pervasive oversight by federal courts over . . . agency compliance with" an executive order, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, 67 (2004).

*Seventh*, also irrelevant are inquiries into FDA's response to drug shortages and review of SIP proposals submitted by other states. Pls.' Interrog. Nos. 14–15; Pls.' Req. for Produc. No. 5. This case centers on the "discrete" issue, *Norton*, 542 U.S. at 64, of Florida's SIP proposal. It does not challenge FDA's *other* statutory authorities for drug shortages nor its treatment of *other* states' SIP proposals. Therefore, these separate topics are irrelevant to the APA claim alleged.

*Finally*, Florida seeks admissions to further its proposal's potential authorization. *See* Pls.' Req. for Admis. Nos. 1–6; Pls.' Mot. 12–13, 15. But *the State* bears the burden of establishing these points; it cannot use litigation to shift this burden onto FDA. *See* 21 C.F.R. §§ 251.3(c)–(d), 251.4. From the first category to the last, Florida's discovery requests are improper and should not be enforced.

## CONCLUSION

This Court should deny Plaintiffs' Motion to Compel Discovery Responses.

January 31, 2023

OF COUNSEL:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and
Human Services

MARK RAZA
Chief Counsel

WENDY VICENTE
Deputy Chief Counsel, Litigation

SARAH ROSENBERG
Assistant Chief Counsel

WILLIAM THANHAUSER
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD  20993-0002

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

HILARY K. PERKINS
Assistant Director
Consumer Protection Branch

*/s/ James W. Harlow*
JAMES W. HARLOW
Senior Trial Attorney
Consumer Protection Branch

*/s/ Kimberly R. Stephens*
KIMBERLY R. STEPHENS
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 514-6786 (Harlow)
(202) 305-0033 (Stephens)
James.W.Harlow@usdoj.gov
Kimberly.R.Stephens@usdoj.gov

MARCIA BERMAN
Assistant Director
Federal Programs Branch

*/s/ Olivia Hussey Scott*
OLIVIA HUSSEY SCOTT
Senior Counsel
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W., Room 11115
Washington, D.C. 20005

Telephone: (202) 616-8491
Fax: (202) 616-8470
Email:  Olivia.Hussey.Scott@usdoj.gov