# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

State of Florida, *et al.*,

      Plaintiffs,

v.

Food and Drug Administration, *et al.*,

      Defendants.

Case No. 8:22-cv-01981-TPB-JSS

## Joint Status Report for the FOIA Claims Subject to Special Handling
### (Counts 2, 3, and 4)

The parties, by counsel, respectfully submit this Joint Status Report for the claims advanced under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as directed in the Court's January 4, 2023 Case Management and Scheduling Order. ECF No. 44, ¶ 2.[1]

1.      Plaintiffs seek the production of records from Defendant Food and Drug Administration ("FDA") in response to a FOIA request submitted by Plaintiff, the Agency for Health Care Administration ("AHCA"), about the State of Florida's Section 804 Importation Program ("SIP") Proposal, other states' SIP Proposals, and various other records about the Section 804 Importation Program,

---

[1] This status report does not address Plaintiffs' claims brought under the Administrative Procedure Act ("APA"), which are proceeding separately.

generally.  The relevant time period for the FOIA request is January 1, 2019, to July 6, 2022, the date the request was submitted to FDA.

2.      The parties have conferred regarding the scope of AHCA's FOIA request.  Specifically, FDA provided its reasonable understanding of certain portions of AHCA's request, described its identified custodians and intended searches, and stated (to the extent possible at this juncture) its objections to the request.  *See* Ex. A, FDA Letter, dated February 15, 2023 ("Feb. 15 Ltr"); *see also* Ex. C, FDA Letter, dated March 17, 2023 ("Mar. 17 Ltr"); Ex. E, FDA Letter, dated March 27, 2023 ("Mar. 27 Ltr").  AHCA responded to FDA's positions, noting areas of agreement and disagreement.  *See* Ex. B, AHCA Letter, dated February 20, 2023 ("Feb. 20 Ltr"); *see also* Ex. D, AHCA Letter, dated March 21, 2023 ("Mar. 21 Ltr").  Although the parties have not resolved all of the disputes discussed thus far, the discussions have been productive, and the parties aim to continue discussing ways to narrow the issues in dispute.

3.      FDA's searches for potentially responsive records, which include both manual and electronic searches, are ongoing.  To date, FDA has begun reviewing, on a rolling basis, the potentially responsive records identified in its initial searches to determine whether any pages are responsive to AHCA's request and, if so, whether any exemptions to disclosure apply under the FOIA. FDA expects that some of the pages identified in its searches may require

2

consultation with other entities with equities in the records before it can make a final decision regarding the release or withholding of pages. AHCA has agreed that any pages that are included in the Administrative Record filed in this case may be excluded from FDA's review.

4.       On March 27, 2023, FDA produced its first interim response to AHCA, for records FDA Bates-numbered as FDACDER000001 to FDACDER001111.[2] This interim response included 339 pages of responsive records, produced in full or in part, and withheld in full pages Bates numbered FDACDER000044 to FDACDER000815.

**Plaintiffs' Position:**

5.       There are two topics Plaintiffs wish to raise for the Court's attention and resolution at this early stage of the FOIA production process.

6.       *First*, Plaintiffs would propose that the Court follow Judge Pittman in the Northern District of Texas and require the FDA to produce documents at a rate of "55,000 pages every 30 days." *Pub. Health & Med. Pros. for Transparency v. FDA*, 2022 WL 90237, at *2 (N.D. Tex. Jan. 6, 2022). That FOIA case involved production of FDA records regarding the COVID-19 vaccines, and Judge Pittman explained that "'stale information is of little value'" and therefore

---

[2] FDA's interim response letter contained an inadvertent typographical error in the identified Bates-numbered range. The error has been corrected in the Bates-numbered range included herein.

"the expeditious completion of Plaintiff's request is not only practicable, but necessary." *Id.* The case before this Court likewise involves time-sensitive and critically important health matters, as the State of Florida and its Agency for Health Care Administration seek to learn about why Defendants have delayed for over 850 days in adjudicating Florida's SIP Proposal, pursuant to which the State could import safe prescription drugs from Canada and redistribute them to Floridians at significant cost savings.

7.      Such a production schedule "appropriately balances the need for unprecedented urgency in processing this request with the FDA's concerns regarding the burdens of production." *Id.* Moreover, given that Plaintiffs in this case submitted their FOIA request in July 2022 and only just now have received the very first production (consisting of a mere few hundred pages), there is no indication that Defendants will produce documents at the necessary clip absent this Court issuing an order requiring it. Defendants manual search identified over 5,500 pages of materials potentially responsive to the first portion of Plaintiffs' request alone. Ex. A, Feb. 15 Ltr, § II.A. That amount would take 11 months to produce at Defendants' requested rate of 500 pages per month. Considering the additional portions of the FOIA request, and that Defendants have not yet reported the results of *any* electronic searches, Defendants' proposal would drag production out for (many) *years*. The production rate Defendants

request here is in no way universal. *See, e.g., Nat'l Pub. Radio, Inc. v. U.S. Dep't of Treasury*, 2019 WL 12262726, at *2 (D.D.C. Aug. 23, 2019); *Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161, 168 (S.D.N.Y. 2019).[3]

8.      *Second*, the parties have made substantial progress on narrowing areas of disagreement for electronic search terms. One area that remains unresolved and which may especially benefit from consideration by the Court now, early in the review process, is whether Defendants should include "wildcards" in any of their searches (e.g., the asterisk in "Florid*" would hit on "Florida" and "Florida's" and "Floridian"). Defendants have stated that they will not conduct *any* wildcard searches. But Plaintiffs have proposed electronic wildcard searches that would capture documents responsive to the FOIA request while minimizing the possibility of capturing unresponsive documents. For example, Plaintiffs have proposed terms like ["FL" AND "SIP*"], ["Fla" AND "SIP*"], and ["SIP*" AND "timeline*"]. The "SIP*" term would capture variations on usage of "SIP" plans and proposals—e.g., "SIPs". And the additional required terms like "FL" or "Fla" or "timeline*" would ensure that the

---

[3] Plaintiffs also note that they have since submitted an identical FOIA request to the FDA that covers the period from July 6, 2022, to March 22, 2023, and the FDA will ultimately have to produce those documents, as well—making it all the more important that productions occur at a clip like that ordered by Judge Pittman.

results capture matters related to SIP proposals and not emails that happen to use an unrelated word beginning with "sip."

9.      Other requested wildcard searches are even more targeted. For instance, Plaintiffs proposed wildcard searches like ["CFR251*"] and ["SIP*" AND "251*"], where 251 references the relevant regulations for evaluating those SIP proposals (21 CFR part 251). Given the myriad sections and subsections within CFR part 251, a wildcard is especially necessary here to capture documents that otherwise would escape review—and is also especially unlikely to yield unresponsive documents because part 251 pertains exclusively to SIP proposals, which are the core topic of the FOIA request at issue here. Similarly, Plaintiffs proposed ["*phrma.org"], which would hit only on emails to or from the lobbying group PhRMA, which has been an outspoken critic of the FDA's final SIP regulations.

10.      Defendants' request for this Court to withhold review until FDA has concluded production is unpersuasive. The Court may "supervise the agency's ongoing progress." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013). "FOIA imposes no limits on courts' equitable powers in enforcing its terms," *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988), and "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness

6

of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

11.     Plaintiffs would accordingly request that the Court order production at the rate of 55,000 pages per month and also require the FDA to run wildcard searches for those examples expressly mentioned in this status report and also require Defendants to confer in good faith regarding Plaintiffs' other proposed wildcard searches.

**Defendants' Position:**

12.     Defendants disagree with both of Plaintiffs' requests, for the Court to order expedited processing of AHCA's FOIA request and for early consideration of the FDA's still-ongoing searches for potentially responsive records as related to the use or not of wildcard search terms.[4]  FDA will address

---

[4] Plaintiffs want wildcard searches that use an asterisk to replace one or more characters, thereby expanding the term to include a broad range of related or unrelated variants.  For example, a wildcard search using "SIP*" would expand the search term to include terms like sipping, sipped, and siphon, among others. Notably, use of wildcard terms would also expand any search to capture various drug names that are likely to appear in FDA records.  Using the same example, a wildcard search using "SIP*" would likely capture drug names like Siponimod, Sipuleucel-T, and Sipuleucel-t Intravenous.  *See Siponimod*, Drugs.com, https://www.drugs.com/mtm/siponimod.html (last visited April 6, 2023); *Sipuleucel-T*, Drugs.com, https://www.drugs.com/mtm/sipuleucel-t.html (last visited April 6, 2023); *Sipuleucel-t Intravenous*, Drugs.com, https://www.drugs.com/cons/sipuleucel-t-intravenous.html (last visited April 6, 2023).

these issues in reverse order, beginning with Plaintiffs' request that the Court "require Defendants to confer in good faith regarding Plaintiffs' other proposed wildcard searches."  *See supra* ¶ 11.

<u>*Request for Use of Wildcard Search Terms*</u>

13.     Defendants are puzzled by Plaintiffs' request that the Court require FDA to confer in good faith on the topic of wildcard search terms because FDA has already done so in making its decision not to use wildcards. *See supra* ¶¶ 2, 8; *see also* Exs. A-E.  FDA's currently scoped searches are reasonably calculated to discover the requested documents and based on FDA's experience adding wildcard search terms is likely to produce overly broad, irrelevant, and inconsistent search results.

14.     Defendants respectfully ask the Court to resist Plaintiffs' invitation to prematurely consider FDA's decision not to use wildcard terms in its search.  FOIA cases are typically resolved on summary judgment, where the agency has the burden to adduce evidence showing it completed a reasonable search.  *See generally Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1243-44 (11th Cir. 2008).  As part of an agency's good faith attempt to search for responsive records it may decide to conduct additional searches, after assessing its original search results.  *See, e.g., Bory v. U.S. R.R. Ret. Bd.*, 933 F. Supp. 2d 1353, 1359 (M.D. Fla. 2013).  An agency's search should be judged based

8

on all the facts about its completed search. *See Landmark Legal Found. v. Env't Prot. Agency,* 272 F. Supp. 2d 59, 62 (D.C. Cir. 2003); *Hodge v. Fed. Bureau of Investigations,* 703 F.3d 575, 580 (D.C. Cir. 2013) (the appropriate time for the Court to assess the adequacy of an agency's search is as ultimately completed, not as initially performed). Here, FDA's searches are ongoing and it only recently submitted its electronic search requests. FDA has not yet received the results from its ongoing searches, including its electronic searches, much less had the time to assess the results. Further, the reasonableness of FDA's search should not be assessed piecemeal; FDA's decision not to use wildcards must be assessed within the context of FDA's completed searches—not at this early stage.

15.      Plaintiffs speculate that wildcard search terms are needed and point to several examples, but none of the examples shows that FDA's decision is unreasonable. Plaintiffs point to the fact that using an "asterisk in 'Florid*' would hit on 'Florida' and 'Florida's' and 'Floridian," *supra* ¶ 8, but they fail to mention that the FDA already plans to search the terms "Florida," "FL," and "FLA," and, because FDA's searches treat punctuation marks as spaces, *see* Ex. C, Mar. 17 Ltr., § I.D, the term "Florida's" is also already included in FDA's current searches. The only term FDA does not plan to search, therefore, is "Floridian." But Plaintiffs have not asked FDA to search the term "Floridian," nor do they explain why they believe that the term would capture any additional potentially

responsive material about Florida's SIP Proposal that FDA's existing searches would not identify, *i.e.*, target a gap in FDA's searches.  Further, the wildcard search term Plaintiffs point to, "florid*," would return results for the irrelevant and overly broad word "florid" and its variants "floridity" "floridly" and "floridness," all of which could appear in FDA's records, given FDA's overall mission.[5]  Plaintiffs' other examples may return similarly irrelevant and overbroad results.[6]

16.     Plaintiffs further argue that "[g]iven the myriad sections and subsections within CFR part 251," FDA's search for the term "251" should be searched instead with a wildcard as "251*." *Supra* ¶ 9.  This is incorrect.  As noted above, FDA's searches treat punctuation marks as spaces, and so any potentially responsive records where the regulation is written with subsections,

---

[5] The term "florid" can be used in a medical or public health-related context to mean "fully developed: manifesting a complete and typical clinical syndrome." *Florid*, Meriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/florid#:~:text=floridly%20adverb-,Medical%20Definition,complete%20and%20typical%20clinical%20syndrome (last visited April 6, 2023).

[6] Plaintiffs also point to wildcard terms "SIP*," "*phrma.org," and "CFR251*," without explaining what purported gaps these terms would target. Because FDA is already conducting numerous searches with the terms "SIP," "SIP proposal," "phrma.org," "PhRMA," "Pharmaceutical Research and Manufacturers of America," "CFR 251," "C F R 251," and "251" (*see* Ex. C, Mar. 17 Ltr, § II), FDA has determined that Plaintiffs' suggested wildcards are not needed to reasonably search for responsive records and the wildcard terms are likely to return irrelevant and overbroad search results.

*e.g.*, 251(a)(1) or 251.a.1, will likely be captured by FDA's existing search.  In contrast, the use of the wildcard "251*" would likely return hits on irrelevant records with any number that starts with 251, including addresses, forms or data numbers, drug application or submission numbers, budget amounts, and medical or scientific equations.

*Request for Faster or Expedited Processing*

17.    Defendants also ask the Court to deny Plaintiffs' request for expedited processing of AHCA's request at a rate sufficient for FDA to produce 55,000 pages every 30 days—a rate that is *at least* 110 times faster[7] than its standard processing rate to review 500 pages per month.  FDA typically follows this standard processing rate to ensure its limited resources, described below, *infra* ¶¶ 19-21, are equitably distributed across its many pending FOIA requests and at this point it intends to use its typical pace in this matter[8]  Plaintiffs cite a

---

[7] Plaintiffs' request would actually require FDA to review even more than 55,000 pages—immeasurably more—to identify 55,000 pages that could be produced.  FDA cannot know, in advance of its review of a given page, whether or not the page can be produced.  The very purpose of processing the pages is to identify whether those records are responsive and not exempt, and therefore can be produced under FOIA.  FOIA does not require the production of non-responsive records or any information within the nine exemptions listed in 5 U.S.C. § 552(b).

[8] Plaintiffs incorrectly state that FDA has not performed any electronic searches.  FDA has begun its electronic searches using the terms identified in its February 15 and March 17 Letters. *See* Exs. A, C.  FDA has not completed its searches and so it does not yet have information sufficient to assess those anticipated search results or the volume of material it will need to review.

Case 8:22-cv-01981-TPB-JSS   Document 68   Filed 04/07/23   Page 12 of 18 PageID 5952

single order for expedited processing from the Northern District of Texas as a basis for their request and they argue ACHA's request is entitled to similar expedited processing because it "seek[s] to learn about why Defendants have delayed for over 850 days in adjudicating Florida's SIP Proposal." *Supra* ¶ 6.[9] But Plaintiffs are not entitled to expedited processing of a FOIA request because of ongoing civil litigation, here their separate APA claim alleging that FDA has unreasonably delayed in adjudicating Florida's SIP Proposal. *See generally* ECF No. 7, Am. Compl.  The rules and timetables of the Federal Rules of Civil Procedure and Local Rules of the Court govern the production of documents for civil litigation; not the procedures for expedited processing of a FOIA request.[10]

---

[9] FDA denied AHCA's request for expedited processing of its FOIA request because AHCA's request "[did] not demonstrate[] a compelling need that involves an imminent threat to the life or physical safety of an individual" or "that there exists an urgency to inform the public concerning actual or alleged Federal Government activity." *See* ECF No. 7-21, Am. Compl., Ex. 21, at 2 (FDA letter denying AHCA's request because it did not demonstrate a compelling need as defined under the Electronic Freedom of Information Act Amendments of 1996, 5 U.S.C. § 552(a)(6)(E)).  AHCA did not administratively appeal FDA's denial, nor does Plaintiffs' amended complaint raise a specific challenge to FDA's denial of expedited processing.

[10] Plaintiffs have already separately moved to compel certain discovery they seek for the APA portion of their case. *See* ECF No. 46, Pls.' Mot to Compel.  On March 17, 2023, Magistrate Judge Sneed entered an Order that granted, in part, and denied, in part, Plaintiffs' motion, *see* ECF No. 63, Mar. 17 Order, and, on April 6, 2023, Plaintiffs filed objections to and appeal of the March 17 Order, *see* ECF No. 64, Pls.' Objs. to and Appeal of Magistrate Judge's Order Partially Den. Pls.' Mot. to Compel.

18.      Also, Plaintiffs' position ignores that FDA's standard review of 500 pages per month is largely consistent with what courts typically require under FOIA to allow an equitable allocation of agency resources across all FOIA cases and requests.  *See, e.g.*, *Nat'l Sec. Couns. v. U.S. Dep't of Just.*, 848 F.3d 467, 471-72 (D.C. Cir. 2017) (in context of challenge to FOIA processing fees, stating policy of processing 500 pages per request per month "serves to promote efficient responses to a larger number of requesters"); *Blakeney v. Fed. Bureau of Investigations*, 2019 WL 450678, at *2 (D.D.C. Feb. 5, 2019) (500 pages per month); *Colbert v. Fed. Bureau of Investigations*, 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (500 pages per month); *Middle E. F. v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185-87 (D.D.C. 2018) (500 pages per month); *id.* at 187 n.3 (noting that, "[i]n a number of recent cases in this District, a production rate of 500 pages per month has been approved," and collecting cases); *Freedom Watch v. Bureau of Land Mgmt.*, 325 F.Supp.3d 139, 140-42 (D.D.C. 2018) (500 pages every 30 days); *Republican Nat'l Comm. v. U.S. Dep't of State*, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016) (500 pages per month); *Energy & Env't Legal Inst. v. U.S. Dep't of State*, Case No. 17-cv-340 (D.D.C.), Minute Ord. of August 22, 2017 (300 pages per month); *Judicial Watch, Inc. v. U.S. Dep't of State*, Case No. 17-cv-205 (D.D.C.), Minute Ord. of June 30, 2017 (300 pages every four weeks); *Am. Ctr. for Law & Just. v. U.S. Dep't of State*, Case No. 16-cv-2516 (D.D.C.), Minute Ord. of June 27,

2017 (process 400 pages per month); *Citizens United v. U.S. Dep't of State*, Case No. 16-cv-67 (D.D.C.), Dkt. 17 at 3 (declining "to adopt Plaintiff's proposed production order of 2000 pages per month" and instead holding State "to its 300-page commitment"); *Citizens United v. U.S. Dep't of State*, Case No. 15-cv-1720 (D.D.C.), Minute Ord. of June 28, 2016 (adopting rate of 500 pages ever four weeks from ECF No. 11 ¶ 10); *Judicial Watch, Inc. v. U.S. Dep't of State*, Case No. 15-cv-687 (D.D.C.), Minute Ord. of April 4, 2017 (500 pages per month); *Republican Nat'l Comm. v. U.S. Dep't of State*, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016); *Color of Change v. U.S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 451 (S.D.N.Y. 2018); *Davis v. U.S. Dep't of Homeland Sec.*, 2013 WL 3288418, at *1 (E.D.N.Y. June 27, 2013).[11]

19.     FDA has limited resources to accomplish its FOIA processing work, which involves its careful review of records and, when necessary, its redaction of exempt information on a line-by-line basis. *See Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 14 (D.D.C. 2015). FDA's Center for Drug Evaluation and Research ("CDER"), the office that maintains most of the records

---

[11] The Eleventh Circuit noted, in *Miccosukee Tribe*, that "[b]ecause of the number of federal government agencies located in Washington, D.C., it is not surprising that the majority of the caselaw interpreting FOIA has been decided by the D.C. Circuit." 515 F.3d at n.23.

requested by ACHA, has approximately 1,000 pending FOIA requests, and over 700 of those pending requests were received before AHCA's request.

20.     CDER's Division of Information Disclosure Policy ("CDER-DIDP") is responsible for processing CDER's pending FOIA requests and it has 47 staff members in total, including one Division Director and 46 full-time staff members; of those, four staff members are assigned to the litigation team in CDER-DIDP.  Among other responsibilities, the litigation team reviews records potentially responsive to FOIA requests that are the subject of litigation, including AHCA's request, and, as needed, redacts information that is exempt from disclosure under FOIA.  Also, CDER-DIDP has other, non-FOIA responsibilities, which include processing document requests from Congress, the U.S. Government Accountability Office, foreign, state, and local governments or regulatory bodies, and other federal agencies; and supporting the U.S. Department of Justice in aspects of its investigations of pharmaceutical companies.  Further, CDER-DIDP is responsible for certain disclosures under the Food and Drug Administration Amendments Act of 2007, related to the publication of New Molecular/Biological Entity (NM/BE) action packages.

21.     FOIA generally requires agencies to process requests in first in, first out fashion, so as not to disadvantage requesters without the resources to litigate.   FDA uses its standard rate of processing as a way to allocate its limited

FOIA processing resources as equitably as possible, given the various competing demands. Expedited processing of AHCA's FOIA request when it does not otherwise qualify under FOIA, *see supra* n.10, would require FDA to divert resources away from its equitable allocation in a manner that would be fundamentally unfair to other FOIA requesters, who also likely believe, as Plaintiffs do, that their FOIA request is important and needs to be processed expeditiously. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (denying motion requesting immediate production of documents pursuant to FOIA request and noting that allowing the plaintiff "to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters"); *Daily Caller*, 152 F. Supp. 3d at 14 (stating that "the plaintiff's effort to jump to the head of the FOIA processing line would work a significant burden on both the agency and numerous interested parties").

22.     FDA's planned schedule is fair to other FOIA requesters and to AHCA, especially given the steps FDA has taken already to narrow the issues in dispute, consider Plaintiffs' position in scoping its searches, and willingness to use Plaintiffs' prioritization in its review. Finally, FDA intends to assess its search results once its searches are completed to try and identify ways to speed

16

up its processing.  As appropriate, FDA also intends to confer with AHCA about ways to narrow or further prioritize its review.[12]

23.      In light of FDA's progress so far and the need to equitably allocate its processing resources, the Court should allow FDA to (1) continue with its currently scoped searches, and (2) to proceed in this case using its standard rate of review for FOIA requests.

\* \* \* \*

24.      The parties' next joint status report is due in 90 days, on July 3, 2023.  *See* ECF No. 44, ¶ 2.

Dated: April 6, 2023

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

MARCIA BERMAN
Assistant Director
Federal Programs Branch

*/s/ Olivia Hussey Scott*
Olivia Hussey Scott (No. 17336)
Senior Counsel
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W., Room 11115

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

*/s/ James H. Percival*
James H. Percival (FBN 1016188)*
CHIEF OF STAFF

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Natalie Christmas (FBN 1019180)
COUNSELOR TO THE ATTORNEY GENERAL

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050)

---

[12] FDA has already agreed to try and implement AHCA's request that FDA prioritize its search and review using the following prioritized order for the specific numbered paragraphs in AHCA's FOIA request:  1, 4, 5, 6, 8, 9, 11, 12, 13, 7, 10, 2, 3, 14.  *See* Ex. B, Feb. 20 Ltr, § I.J; Ex. C, Mar. 17 Ltr, § I.J.

Washington, D.C. 20005
Telephone: (202) 616-8491
Fax: (202) 616-8470
Olivia.Hussey.Scott@usdoj.gov


HILARY K. PERKINS
Assistant Director
Consumer Protection Branch

*/s/ James W. Harlow*
JAMES W. HARLOW
Senior Trial Attorney
Consumer Protection Branch


*/s/ Kimberly R. Stephens*
KIMBERLY R. STEPHENS
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 514-6786 (Harlow)
(202) 305-0033 (Stephens)
James.W.Harlow@usdoj.gov
Kimberly.R.Stephens@usdoj.gov
*Counsel for Defendants*

(850) 414-3300
(850)410-2672  (fax)
James.percival@myfloridalegal.com
*Counsel for the State of Florida*


*/s/ R. Trent McCotter*
C. Boyden Gray (pro hac vice)
R. Trent McCotter (pro hac vice)*
Jared M. Kelson (pro hac vice)
Boyden Gray & Associates, PLLC
801 17th St. N.W., Suite 350
Washington, D.C. 20006
(202) 706-5488
mccotter@boydengrayassociates.com


Andrew T. Sheeran
General Counsel
Florida Bar I.D. No. 0030599
Andrew.Sheeran@ahca.myflorida.com
Agency for Health Care Administration
2727 Mahan Drive, Mail Stop #3
Tallahassee, Florida 32308
(850) 412-3670


*Counsel for Agency for Health Care Administration*


* Lead counsel


*Signed by filing counsel with the permission of non-filing counsel*