**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**Case No. 8:22-cv-1981-TPB-JSS**

STATE OF FLORIDA, et al.,

*Plaintiffs*,

v.

FOOD AND DRUG ADMINISTRATION, et al.,
*Defendants.*

## PLAINTIFFS' STATUS REPORT FOR APA CLAIMS

Plaintiffs respectfully submit this status report in response to Defendants' supplemental status report, which attached an August 14 letter from Defendants to Plaintiffs. *See* ECF No. 85. In that supplemental status report, Defendants claimed that Florida's SIP Proposal—pursuant to which the State would save over $100 million annually by importing lower-cost prescription drugs from Canada—"still does not contain certain information that is required under the SIP regulations." *Id.* at 1. Defendants demanded a response within fourteen days, even though this lands squarely during hurricane season, and indeed a hurricane is predicted to make landfall in Florida in the next few days.

In the attached response sent yesterday, the Florida Agency for Health Care Administration explained that Defendants' latest round of objections only

further demonstrates the lengths to which Defendants will go to avoid approving Florida's SIP Proposal.

For example, in their August 14 letter, Defendants claimed—*for the very first time*—that Florida must have a warehouse within 30 miles of Detroit, Michigan. This requirement has never previously been disclosed even though Florida's SIP Proposal has been pending for over 1,000 days, with frequent contact between the parties, and there appears to be no formal agency documentation where Defendants have ever previously announced to the public that a State submitting a SIP proposal must have a facility in Detroit, of all places. Of course, Defendants have been fully aware for years that Florida has no warehouse in or near Detroit.

The illogic of this requirement is only heightened by the fact that the FDA has dozens of other approved ports of entry for prescription drugs, including one close to the fully-FDA-approved Whitestown, Indiana, facility that Florida *does* have under contract with LifeScience Logistics. *See Indiana Import Offices and Ports of Entry*, https://www.fda.gov/industry/import-offices-and-ports-entry/indiana-import-offices-and-ports-entry. The Indianapolis port of entry for prescription drugs is one of the busiest in the country because so many pharmaceutical companies are located nearby.

It seems Defendants are using the requirement of a Detroit facility as a failsafe. They make a secret determination of where prescription drugs must

be warehoused upon entry into the United States and then—right as a State like Florida is on the cusp of receiving final approval after years of being given the run-around—announce for the very first time that the location is, unsurprisingly, in a city where the State has no facility.

This kind of arbitrary and vindictive behavior epitomizes Defendants' actions over the nearly three years during which Florida's SIP Proposal has been pending. In the attached response, Florida argues that denying the SIP Proposal on this basis would be illegal, and that Defendants should stop playing games and simply authorize Indianapolis as an approved port of entry for Florida's SIP Proposal.

In their August 14 letter, Defendants also complained that Florida did not provide certain data regarding rebates received for prescription medicines, even though Defendants already possess almost all of that information and even though the act of Florida providing such data—even to Defendants—would apparently violate federal statutory law. *See* 42 U.S.C. § 1396r-8(b)(3)(D) (providing that "information disclosed by manufacturers or wholesalers" for rebates "shall not be disclosed by … a State agency (or contractor therewith) in a form which discloses the identity of a specific manufacturer or wholesaler, prices charged for drugs by such manufacturer or wholesaler").

Of course, Defendants cannot claim a *regulation* requires Florida to

provide information if doing so would violate a federal *statute*. That is strong evidence that such data is not required at all for SIP proposals. But if it is required, Florida has asked for clarification on how it could provide such information legally, including whether Defendants will issue an exception allowing such disclosure. But Defendants instead continue to feign ignorance at why Florida has concerns about confidentiality in the first place.

For years now, Defendants have persistently imposed hoops for Florida to jump through, and each time Florida has called those bluffs and risen to the task. Florida intends to try to do so this time, as well, subject to preparing for the hurricane predicted to make landfall soon. But the increasing absurdity of the hoops imposed by Defendants demonstrates that they perhaps intend to deny Florida's SIP Proposal no matter how much information Florida provides.

Dated: August 29, 2023

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

*/s/ James H. Percival*

James H. Percival* (FBN 1016188)
CHIEF OF STAFF

Natalie Christmas (FBN 1019180)
COUNSELOR TO THE ATTORNEY GENERAL

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

* *Lead Counsel*

*Counsel for the State of Florida*

*/s/ R. Trent McCotter*
R. Trent McCotter (*pro hac vice*)*
Jared M. Kelson (*pro hac vice*)
BOYDEN GRAY PLLC
801 17th St. NW, #350
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com
* *Lead Counsel*

ANDREW T. SHEERAN
General Counsel
Florida Bar I.D. No. 0030599
Andrew.Sheeran@ahca.myflorida.com
Agency for Health Care Administration
2727 Mahan Drive, Mail Stop #3
Tallahassee, Florida 32308
(850) 412-3670

*Counsel for Agency for Health Care Administration*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2023, I filed the foregoing via the Court's CM/ECF system, which will serve all counsel.

*/s/ R. Trent McCotter*
R. TRENT MCCOTTER