# Ex. A



**RON DESANTIS**
**GOVERNOR**

**JASON WEIDA**
**SECRETARY**

August 28, 2023

S. Leigh Verbois, Ph.D.
Director
Office of Drug Security, Integrity, and Response
Office of Compliance
Center for Drug Evaluation and Research
U.S. Food and Drug Administration

Dear Director Verbois,

The Florida Agency for Health Care Administration (Agency) appreciates the U.S. Food and Drug Administration's (FDA) partnership in working to bring lower prescription drug costs to Floridians and its efforts in completing the August 14, 2023, Request for Information (RFI). Like the FDA, the State of Florida is committed to ensuring that its population receives imported prescription drugs that are safe, authentic, and affordable. Additionally, Florida is looking forward to using the savings generated from prescription drug importation to support critical issues facing the State and alleviate taxpayer burden.

The Agency fully intends to resubmit Florida's Section 804 Importation Program (SIP) proposal as soon as possible. However, the Agency requires further time to complete the necessary revisions. The FDA's issuance of a 14-day deadline to resubmit is unreasonable considering some of the requested information has significant legal ramifications and involves requirements that the FDA failed to inform us of until now, more than 1,000 days after the initial submission. The Agency requests a conference call as soon as possible to get clarification on ambiguities in the Final Rule. This call is necessary to ensure that we can provide the most accurate revisions possible.

Furthermore, the Agency desires clarification on the following points noted by the FDA:

- Page 5: The FDA states that Florida's SIP proposal does not "explain how the SIP Sponsor will ensure that the SIP will result in a significant reduction in the cost to the American consumer of the eligible prescription drugs that the SIP Sponsor seeks to import." Specifically, the FDA objects that "drug-specific projections are redacted so that it is not possible for HHS to review them." The FDA seems to concede that it *can* verify drug-specific prices after *federal* rebates by consulting the Centers for Medicare and Medicaid Services (CMS) and/or drug manufacturers, but the FDA nonetheless objects that "CMS does not have drug-specific information on *state* supplemental Medicaid rebates …. to the extent that such rebates apply" (emphasis added). The FDA then invites the Agency "to discuss with [FDA] the confidentiality concerns referred to in the proposal."

    Section 1927(b)(3)(D) of the Social Security Act, 42 U.S.C. 1396r-8(b)(3)(D), provides that "information disclosed by manufacturers or wholesalers" for rebates "shall not be disclosed by … a State agency (or contractor therewith) in a form which discloses the

S. Leigh Verbois
August 28, 2023
Page 2

> identity of a specific manufacturer or wholesaler, prices charged for drugs by such manufacturer or wholesaler." Of course, the FDA cannot require the Agency to provide information as part of a SIP proposal if doing so would violate a federal statute. Indeed, the FDA's regulations expressly require SIP sponsors to explain how they will ensure confidential manufacturer information remains protected. *See* 21 C.F.R. § 251.3(e)(16).
>
> The Agency is concerned that this statutory provision prohibits it from disclosing state supplemental Medicaid rebate information even to the FDA itself. The Agency asks the FDA to clarify its position on whether this statutory prohibition applies, and if so, whether the Secretary of Health and Human Services is invoking an exception to that prohibition under section 1927(b)(3)(D)(i). Otherwise, compliance with the statute means the FDA will need to verify information directly with manufacturers or rely on the certified estimates provided by the Agency.
>
> The Agency has raised this concern already. *See, e.g.*, Florida's April 2023 SIP at p.23 ("Due to federal statutory requirements mandating the confidentiality of Medicaid prescription drug rebates, the Agency has redacted those numbers from the cost analysis. The FDA can consult the manufacturers and the Centers for Medicare and Medicaid Services (CMS) to verify that information."). Accordingly, the Agency *again* asks the FDA to clarify exactly what information it requires that is not already in possession of HHS, and also clarify exactly how SIP sponsors like Florida can legally provide that information. The Agency is open to providing the rebate information to the FDA if the FDA can suggest a way to do so that does not violate State or federal law or individual rebate agreements with manufacturers.
>
> In any event, there is only one drug that is subject to a state supplemental Medicaid rebate included in Florida's SIP proposal. If the FDA refuses to provide a legal way to verify those cost savings and declines to verify the necessary information directly with the manufacturer, then Florida can resubmit its SIP proposal without that drug.

- Page 5: The FDA notes prescription drugs imported "in connection with a government program" must "meet the program's requirements" to be eligible. The Agency has already reviewed CMS's September 2020 guidance, which does provide a path for state Medicaid programs to cover imported prescription drugs. What the Agency questions is whether the FDA is requiring proof of Florida Medicaid's authority as a condition to obtain approval of the SIP proposal. This requirement does not seem to appear in 21 C.F.R. § 251.

- Page 7: The FDA also objects to Florida's secure warehouse to receive imported drugs in Whitestown, Indiana, stating that the facility must instead be within 30 miles of Detroit, Michigan, which the letter claims—for the first time ever—is the only authorized Port of Entry for SIPs. Title 21 CFR 251.17(b) provides that imported drugs must be stored at a secure facility "within 30 miles" of a "[U.S. Customs and Border Patrol] port of entry authorized by FDA to import eligible prescription drugs under section 804 of the Federal Food, Drug, and Cosmetic Act …. until FDA issues an admissibility decision."

S. Leigh Verbois
August 28, 2023
Page 3

It is unclear when or how the FDA selected Detroit as the only authorized Point of Entry for SIPs, as there appears to be no documentation where the FDA announced this decision. If the FDA takes the view that there can be only one port of entry that all SIPs must use, then such a determination should have been made via public rulemaking, as it is a matter of critical significance to SIP proposals. Instead, it appears the FDA secretly chose Detroit and then never made a public announcement, choosing instead to spring it at the eleventh hour.

It is just as baffling why, after more than 1,000 days, multiple formal and informal information meetings, phone calls, requests for additional information, and SIP proposal revisions, the FDA is only now raising this issue with the Agency. The FDA's omission is especially egregious because the FDA has known all along that Florida did not have a facility within 30 miles of Detroit. Denying Florida's SIP proposal on this basis would be the height of arbitrary and capricious action.

It would also be patently unreasonable to insist that Florida identify and secure a new facility in Detroit that meets the FDA's requirements in the mere two weeks that the FDA has given for the Agency to respond.

There is an easy solution, however. Florida has secured an FDA-approved and licensed warehouse in Whitestown that is within 30 miles of the FDA-approved port of entry in Indianapolis (Port Code 4110). *See Indiana Import Offices and Ports of Entry*, https://www.fda.gov/industry/import-offices-and-ports-entry/indiana-import-offices-and-ports-entry.

The Agency therefore requests that the FDA authorize the Indianapolis port of entry (Port Code 4110) to be a Port of Entry for prescription drugs imported pursuant to SIPs. Florida notes that the Indianapolis port of entry is a particularly justified port of entry for SIPs—even superior to Detroit—because Indianapolis is one of the most commonly used ports of entry for prescription drugs in the United States. Indiana is home to the global headquarters for Cook Medical, Elanco Animal Health, Elevance Health, Eli Lilly & Company, and Zimmer Biomet, and is the North American headquarters of Corteva Agriscience and Roche Diagnostics. Baxter, Beckman Coulter, Boston Scientific, Catalent, LabCorp, Mead Johnson/ Reckitt Benckiser, and Medtronic all host major operations in the state. In addition, Indiana has one of the largest and most prominent groups of contract development and manufacturing organizations in the United States, with companies such as Azenta Life Sciences, Evonik, Inotiv, and Merck's Contract Development and Manufacturing Organization. Moreover, as noted above, Florida already has contracted for a fully FDA approved warehouse in Whitestown, Indiana, which is less than 30 miles from the Indianapolis port of entry.

In the meantime, Florida's contractor LifeScience Logistics has begun searching for an additional warehouse within 30 miles of Detroit should the FDA take the patently untenable position that no other Ports of Entry will be authorized for SIPs. Securing another warehouse in Detroit will pose an uncalled-for delay and may result in an unnecessary increase in supply chain costs.

S. Leigh Verbois
August 28, 2023
Page 4

The Agency once again thanks the FDA for its continued partnership in striving to reduce prescription drug prices for Florida and anticipates submitting a revised SIP proposal in the coming weeks. As always, we look forward to having an approved SIP proposal to turn this goal of lower costs into reality. If you need any other information, please feel free to contact us.

Sincerely,

Jason Weida
Secretary
Florida Agency for Health Care Administration

Melanie S. Griffin
Secretary
Florida Department of Business and Professional Regulation