## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| State of Florida, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>Food and Drug Administration, *et al.*,<br><br>        Defendants. | Case No. 8:22-cv-01981-TPB-JSS |
| State of Florida, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>Food and Drug Administration, *et al.*,<br><br>        Defendants. | Case No. 8:23-cv-0877-TPB-TGW |

### Defendants' Opposition to Plaintiffs' Motion to Set Final FOIA Production and *Vaughn Index* Deadlines

The Court should deny Plaintiffs' Motion to Set Final Freedom of Information Act ("FOIA") Production and *Vaughn Index* Deadlines ("Pls.' Mot."), filed in both of the above-captioned cases,[1] because Plaintiffs' request for a February 1, 2024 FOIA production deadline and a March 4, 2024 *Vaughn Index* deadline would impose an undue burden on the United States Food and Drug Administration's ("FDA") Center for Drug Evaluation and Research's ("CDER"), Office of Regulatory Policy, Division of Information Disclosure Policy ("DIDP"). DIDP would have to review immeasurably more than 40,000 pages of potentially

---

[1] Defendants have responded in both the above-captioned cases.  Unless otherwise noted, Defendants citations to the dockets in this filing using "ECF" refer to the case docket for case no. 8:22-cv-1981, and those using "*Florida II* ECF" refer to the case docket in case no. 8:23-cv-0877.

responsive records every month for the next five months to meet Plaintiffs' proposed deadline, and that doesn't account for the time FDA needs to complete its searches and gather the potentially responsive material for the second and third FOIA requests, submitted in March and May 2023, respectively. Plaintiffs' proposal is not just impracticable, but it is impossible without severely and adversely impacting the agency's ability to respond to other record requests and production obligations. Also, Plaintiffs' litigation-based reasons for seeking expedited processing are insufficient; FOIA is not a substitute for civil discovery. Given the broad scope of these requests and FDA's diligent work, the Court should deny Plaintiffs' motion and allow FDA to continue its processing at its standard rate to ensure that it can equitably distribute its resources across its many pending FOIA requests and disclosure obligations.

FDA also objects to Plaintiffs' request for *Vaughn* indices in advance of FDA's motion for summary judgment as premature and unduly burdensome. Although a *Vaughn* index often accompanies the agency's dispositive motion, an agency is generally not required to provide one absent a corresponding dispositive motion. *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 187 n. 5 (D.C. Cir. 2013) ("*CREW*"). And the Eleventh Circuit has expressly declined to require one in every FOIA case. *Miscavige v. I.R.S.*, 2 F.3d 366, 367 (11th Cir. 1993). FDA must complete its review of the potentially responsive records

before it can begin work on any *Vaughn* index that might be needed for these cases and, in light of the volume of its search results so far, FDA is likely to need more than 30 days here following its final response to produce any *Vaughn* index.

## LEGAL BACKGROUND

Under FOIA, an agency is required to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any [FOIA] request whether to comply with such request." 5 U.S.C. § 552(a)(6)(A)(i). The agency must, *inter alia,* "immediately notify the person making such request of . . . such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i)(I)-(III). FOIA further provides that a requester "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions." *Id.* § 552(a)(6)(C)(i). Thus, FOIA's 20-working-day time period does not create a deadline for production. *CREW*, 711 F.3d at 189-90. Rather, "if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id.* (noting that after its "determination," an agency may still need additional time to "redact, duplicate, or assemble" the documents it has decided to produce and "[t]he agency must do so and then produce the records "promptly"). FOIA does permit agencies to prioritize certain requests via "expedited processing," 5 U.S.C. § 552(a)(6)(E), but

again there is no statutory production deadline—expedited processing is to be done "as soon as practicable," *id.* § 552(a)(6)(E)(iii). *See also* 21 C.F.R. § 20.44.

Where a requester seeks judicial review, "the agency may further extend its response time if it demonstrates 'exceptional circumstances' to the court." *CREW* at 185. Although FOIA does not define "exceptional circumstances," it does provide some "directional signals," including consideration of an agency's "reasonable progress in reducing its backlog" of requests and "[r]efusal by a [requester] to reasonably modify the scope of [their] request or arrange an alternative time frame for processing a request (or a modified request)" after the agency provided them "an opportunity . . . to do so." *Id.* at 185 n.2. Upon such a showing, "then so long as 'the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.'" *Id.* at 185.

## FACTUAL BACKGROUND

Plaintiffs' motion relates to three FOIA requests submitted to FDA on July 6, 2022 ("July 2022 Request"), March 22, 2023 ("March 2023 Request"), and May 22, 2023 ("May 2023 Request"), respectively.

## I.   AHCA's July 2022 FOIA Request, and FDA's Work in Response

On July 6, 2022, Plaintiff AHCA submitted a FOIA request to FDA seeking records in fourteen broad categories related to the Section 804 Importation

4

Program ("SIP Program"), "Florida's SIP Proposal," and the proposals submitted by other states. ECF 7-19, July 2022 Request. The relevant time period is January 1, 2019, to July 6, 2022. *Id.* AHCA sought expedited processing. *Id.* at 1-3.

On July 7, 2022, FDA, through its Division of Freedom of Information ("DFOI") acknowledged receipt of the July 2022 Request and stated that "[d]ue to an increase in the number of incoming requests," FDA may be unable to comply with the 20-day, or even 30-day, time limits for its determination under FOIA, and that "[t]he actual processing time will depend on the complexity of [AHCA's] request and whether sensitive records, voluminous records, extensive search, and/or consultation[s] . . . are involved."   ECF No. 7-20, DFOI Letter (July 2022 Request). Then, on July 20, 2022, FDA sent a second letter to AHCA stating that it had denied AHCA's expedited processing request because it "d[id] not meet the criteria under the FOIA" as it had "not demonstrated a compelling need that involves an imminent threat to the life or physical safety of an individual" or "that there exists an urgency to inform the public concerning actual or alleged Federal Government activity." ECF 7-21, 2d DFOI Letter (July 2022 Request). FDA's second letter also identified that the responding agency office would process AHCA's request "in the order in which it was received." *Id.*

In February 2023, after completing its initial manual searches, FDA initiated discussions with AHCA regarding FDA's reasonable interpretation of and initial

objections to the July 2022 Request, as well as the scope of its intended searches for potentially responsive materials. ECF 68-1, FDA's February 15, 2023 Letter ("Feb. 15 Ltr"). In an effort to efficiently process AHCA's request, FDA also suggested options for narrowing the breadth of AHCA's request. *Id.* at 1. Subsequent discussions to date between the parties have involved considerable back-and-forth, covering search terms, custodians, and types of records, among other topics. *See* ECF 68-2, AHCA February 20, 2023 Letter ("Feb. 20 Ltr"); *see also* ECF 68-3, FDA March 17, 2023 Letter ("Mar. 17 Ltr"); ECF 68-4, AHCA March 21, 2023 Letter ("Mar. 21 Ltr"); ECF 68-5, FDA March 27, 2023 Letter ("Mar. 27 Ltr"); Ex. B, FDA July, 21, 2023 Letter ("July 21 Ltr."). AHCA requested that FDA expand the scope of its searches beyond the already robust searches FDA had identified, *see e.g.,* Feb. 20 Ltr., and after considering AHCA's requests, FDA determined it would expand the scope to include some, but not all, of AHCA's requests, *see e.g.,* Mar. 17 Ltr.

Indeed, when FDA later received the results of its electronic searches, it notified AHCA that the searches returned an enormous volume of potentially responsive records—far too enormous to process—and that it planned to shift to include proximity elements to better scope its searches. Ex. B, July 21 Ltr. Even still, the volume of records in need of review—for just AHCA's July 2022 Request—includes 10,428 potentially responsive documents (with document families, the number increases to over 20,000), many of which have multiple pages.

*Id.* at 6. FDA is now able to report that these search results include over 200,000 pages of potentially responsive materials in need of review. Ex. A, Declaration of Howard Philips ("Philips Decl."), ¶ 7.

FDA has been reviewing the search results at its standard pace of at least 500 pages per month, and to date it has produced six interim responses to the July 2022 Request, comprised of 3,957 pages. *Id.*

## II.   AHCA's March 2023 FOIA Request, and FDA's Work in Response

On March 22, 2023, AHCA submitted its second FOIA request asking for the same fourteen categories of information as described in their July 2022 Request, but for a separate relevant time period: July 6, 2022 to March 22, 2023. *Florida II* ECF 23-1, March 2023 Req. AHCA sought expedited processing. *Id.* at 2-3.

As before, FDA sent two letters following the March 2023 Request: (1) a letter that acknowledged receipt of the March 2023 Request and noted that FDA's determination under FOIA may not be within the 20-day statutory time period "due to an increase in the number of incoming requests," *see Florida II* ECF No. 23-2, DFOI Letter (March 2023 Req.); and (2) a letter that denied AHCA's request for expedited processing, *id.*, ECF 23-3, 2d DFOI Letter (March 2023 Req.).

In June 2023, FDA again initiated discussions with AHCA by letter, providing FDA's reasonable interpretation of and initial objections to the March 2023 Request, as well as the scope of its intended searches for potentially

responsive materials. Ex. C, FDA June 21, 2023 Letter ("June 21 Ltr."). AHCA responded to FDA's letter by email from its counsel, dated June 26, 2023, inquiring about "where, if at all, this differs from the understanding we reached re the 1st FOIA request" and noting that "[w]ith the exception of wild cards and production rates, [the parties had] largely agreed on the search terms and (broadly described) the custodians" for AHCA's June 2022 Request. Ex. D, Counsel Emails, 1. Defendants' counsel responded that same day to direct counsel to FDA's letter for specifics, and highlight a few of the main differences, including that FDA had identified additional search terms needed due to the new relevant time period. *Id.*

FDA's work on this request is ongoing, but it does not yet know the volume of its search results. Philips Decl., ¶ 8.

### III.   AHCA's May 2023 FOIA Request, and FDA's Work in Response

On May 22, 2023, AHCA submitted its third FOIA again seeking the same categories of information as the July 2022 and March 2023 Requests, but for a separate relevant time period: March 22, 2023 to May 22, 2023. *Florida II* ECF 23-4, May 2023 Req. AHCA sought expedited processing.  *Id.* at 2-3.

As before, FDA sent two letters following the May 2023 Request: (1) a letter that acknowledged receipt of the request and noted that FDA's determination under FOIA may not be within the 20-day statutory time period "due to an increase in the number of incoming requests," *Florida II* ECF No. 23-5, DFOI Letter

(May 2023 Req.); and (2) a letter that denied AHCA's request for expedited processing, *id.*, ECF 23-6, 2d DFOI Letter (May 2023 Req.). FDA has not yet initiated further discussions with AHCA for its May 2023 Request. FDA's work on this request is ongoing, but it does not yet know the volume of its search results. Philips Decl., ¶ 8.

## IV.    Procedural History of the Litigation

In August 2022, Plaintiffs filed the first above-captioned suit against FDA, which raises claims under the Administrative Procedure Act ("APA") and seeks the production under FOIA of records responsive to AHCA's July 2022 Request, *see* ECF 7; Defendants filed their answer in November 2022, *see* ECF Nos. 26.

The Court's initial case management conference was held in December 2022, after which the Court entered its Case Management and Scheduling Order, which adopted the parties' agreed schedule for the FOIA portion of the case, directing that the parties "shall file joint status reports every 90 days regarding Defendants' progress searching for and then reviewing documents in accordance with FOIA," and that "[o]nce the Defendants' response . . . is completed, the parties are directed to confer and, if necessary, jointly propose dates for dispositive motions on the FOIA claims." ECF 44, Case Mgmt and Sch. Order, 2; *see also* ECF 27, Report, 11.

In the parties' subsequent joint status reports, Plaintiffs have asked for expedited processing—first at the rate that would produce 55,000 pages per

month, ECF 68, 3-7, and then by generally seeking "a dramatically higher review and production rate," ECF 83, 4-5. In each of the parties' joint status reports, Defendants have opposed Plaintiffs' requests for faster processing and, for the reasons explained therein and below, asked the Court to allow FDA to continue its processing using its standard rate of review, which ensures its limited processing resources are allocated equitably. *See* ECF 68, 11-17; ECF 83, 5-9.

In April 2023, Plaintiffs filed the second above-captioned suit regarding the March 2023 Request, *Florida II* ECF 1, Compl.; Defendants answered in May 2023, *Florida II* ECF 18. After its initial case management conference, the Court entered a Case Management and Scheduling Order that, as before, adopted the parties' proposed schedule that the parties to "file joint status reports every 90 days regarding Defendants' progress searching for and then reviewing documents in accordance with FOIA" and directed that "[o]nce the Defendants' response . . . is completed, the parties are directed to confer and, if necessary, jointly propose dates for dispositive motions on the FOIA claims." *Florida II* ECF 24, Case Mgmt. and Sch. Order, 1; *see also Florida II* ECF 22, Uniform Case Mgmt. Rpt., 4-5.

With Defendants' consent, in August 2023, Plaintiffs filed an amended complaint in their second suit to add allegations about AHCA's May 2023 Request. *Florida II* ECF 23, Am. Compl. Defendants timely answered the amended complaint. *Florida II* ECF 26, Answer. Then, on August 22, 2023, Plaintiffs filed

their motion for a final production deadline of February 1, 2024, and a March 4, 2024 deadline for production of *Vaughn* indices. Defendants oppose both requests.

## ARGUMENT

Plaintiffs' motion for a February 2024 production deadline is yet another attempt to expedite FDA's review, this time via a deadline that would force FDA to process potentially responsive records at an even faster rate than previously requested in the parties' joint status reports, at ECF Nos. 68 and 83. To meet their requested deadline, FDA would be required to process—just for the July 2022 Request—over 40,000 pages per month, a rate at least eighty times faster than FDA's standard processing rate of review of 500 pages per month. *See* Philips Decl., ¶¶ 7, 26 (describing that FDA's searches for the July 2022 Request have identified over 200,000 pages of potentially responsive material). And by including the other two FOIA requests—which seek a similarly broad set of agency records for a different time period—Plaintiffs actually seek immeasurably faster processing, especially given that FDA needs time to complete its searches for the March and May 2023 Requests and assess the results. *Id.* ¶¶ 8, 26.

Agencies generally process requests in first-in, first-out fashion so as not to disadvantage requesters without the resources to litigate. As explained in Director Philips' Declaration, DIDP, FDA's office processing AHCA's requests, cannot meet Plaintiffs' requested deadline without severely and adversely impacting the

agency's ability to respond to other record requests and document production obligations. Philips Decl., ¶¶ 4, 26-284. DIDP has limited resources available and a large workload of both FOIA and non-FOIA related tasks. *Id.* ¶¶ 19-23.[2] Due to its large number of FOIA requests, DIDP uses a multi-track, first-in, first out system to search for, carefully review and redact, and then produce responsive, non-exempt information efficiently. *Id.* ¶¶ 10-17. At the start of 2022, DIDP had 781 pending requests, and, by July 31, 2023, it had received another 4,067 requests. *Id.* ¶ 18.  Over that same time period DIDP made significant progress, completing its responses to 3,680 FOIA requests, but there are still over 1,200 FOIA requests pending review, of which 1,001 are on DIDP's complex track, *id.*, as they "will likely involve more extensive searches in different locations and/or significant review and redaction time," *id.* ¶ 12. The raw numbers of FOIA requests, however, do not provide a complete picture of the volume of DIDP's FOIA-related workload for several reasons, including that the types of records DIDP processes require particular care due to the sensitive nature of CDER's work. *Id.* ¶¶ 22-24.

Given its various competing demands and to equitably process the FOIA requests in DIDP's queue, DIDP generally uses its 500 pages per month, standard

---

[2] DIDP's non-FOIA responsibilities include processing requests from Congress, the U.S. Government Accountability Office, foreign, state, and local governments or regulatory bodies, and other agencies; supporting investigations and non-FOIA litigation, and, consistent with Executive Order 13,392, proactively reviewing, redacting, and posting publicly records likely to be frequently requested, e.g., drug approval packages and Warning Letters. Philips Decl., ¶ 25.

rate of processing. *Id.* ¶¶ 13, 28. Expedited processing of AHCA's FOIA requests, when they do not otherwise qualify for such processing under FOIA would require DIDP to divert resources away from its equitable allocation in a manner that would be fundamentally unfair to other FOIA requesters who also likely believe, as Plaintiffs do, that their FOIA request is important and needs to be processed expeditiously. *Id.,* ¶ 4 ; *see Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (denying motion requesting immediate production of documents pursuant to FOIA request and noting that allowing the plaintiff "to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters"); *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 14 (D.D.C. 2015). Indeed, DIDP is currently processing many FOIA requests that it received before AHCA's requests from which DIDP would need to divert resources. Specifically, 675 FOIA requests are pending that DIDP received before the July 2022 Request, and the number increases when considering later two requests, which fall behind 883 and 975 currently pending requests in DIDP's processing queue, respectively. Philips Decl. ¶ 23. Plaintiffs request to prioritize AHCA's requests over earlier-submitted requests would be unfair to those other requesters.

Courts have permitted agencies to use standard review rates consistent with FDA's standard rate of 500 pages per month to equitably allocate agency resources

across all FOIA cases and requests. *See, e.g., Nat'l Sec. Couns. v. U.S. Dep't of Just.*, 848 F.3d 467, 471-72 (D.C. Cir. 2017) (in context of challenge to FOIA processing fees, stating policy of processing 500 pages per request per month "serves to promote efficient responses to a larger number of requesters"); *Blakeney v. Fed. Bureau of Investigations*, 2019 WL 450678, at *2 (D.D.C. Feb. 5, 2019) (500 pages per month); *Colbert v. Fed. Bureau of Investigations*, 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (500 pages per month); *Middle E. F. v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185-87 (D.D.C. 2018) (500 pages per month); *id.* at 187 n.3 (noting that, "[i]n a number of recent cases in this District, a production rate of 500 pages per month has been approved," and collecting cases); *Freedom Watch v. Bureau of Land Mgmt.*, 325 F. Supp. 3d 139, 140-42 (D.D.C. 2018) (500 pages every 30 days); *Republican Nat'l Comm. v. U.S. Dep't of State*, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016) (500 pages per month); *Energy & Env't Legal Inst. v. U.S. Dep't of State*, Case No. 17-cv-340 (D.D.C.), Minute Ord. of August 22, 2017 (300 pages per month); *Judicial Watch, Inc. v. U.S. Dep't of State*, Case No. 17-cv-205 (D.D.C.), Minute Ord. of June 30, 2017 (300 pages every four weeks); *Am. Ctr. for Law & Just. v. U.S. Dep't of State*, Case No. 16-cv-2516 (D.D.C.), Minute Ord. of June 27, 2017 (process 400 pages per month); *Citizens United v. U.S. Dep't of State*, Case No. 16-cv-67 (D.D.C.), Dkt. 17 at 3 (declining "to adopt Plaintiff's proposed production order of 2000 pages per month" and instead holding State "to its 300-page

14

commitment"); *Citizens United v. U.S. Dep't of State*, Case No. 15-cv-1720 (D.D.C.), Minute Ord. of June 28, 2016 (adopting rate of 500 pages ever four weeks from ECF No. 11 ¶ 10); *Judicial Watch, Inc. v. U.S. Dep't of State*, Case No. 15-cv-687 (D.D.C.), Minute Ord. of April 4, 2017 (500 pages per month); *Republican Nat'l Comm. v. U.S. Dep't of State*, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016); *Color of Change v. U.S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 451 (S.D.N.Y. 2018); *Davis v. U.S. Dep't of Homeland Sec.*, 2013 WL 3288418, at *1 (E.D.N.Y. June 27, 2013).[3]

Plaintiffs ignore this authority and instead rely on three outlier cases to support their request—each of which is inapposite here.  Plaintiffs first rely on *Pub. Health & Med. Pros. for Transparency v. FDA*, 2022 WL 90237, at *2 (N.D. Tex. Jan. 6, 2022) (*PHMPT*), in which the Court ordered FDA to produce 55,000 of pages of records every 30 days. But the FOIA request at issue in *PHMPT* seeks "all data and information for the Pfizer Vaccine," which was developed in response to the global COVID-19 pandemic and authorized via an emergency use authority. Moreover, since its authorization millions of Americans have received the Pfizer vaccine. In contrast, AHCA seeks records about FDA's consideration of Florida's and other state's SIP proposals, among many other things, about a drug importation program that is not currently in existence, but under consideration. Plaintiffs'

---

[3] "Because of the number of federal government agencies located in Washington, D.C., it is not surprising that the majority of the caselaw interpreting FOIA has been decided by the D.C. Circuit." *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, n. 23 (11th Cir. 2008).

reliance on *Nat'l Pub. Radio v. U.S. Dep't of Treas.*, 2019 WL 12262726 (D.D.C. Aug. 23, 2019) and *Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161, 168 (S.D.N.Y. 2019) is similarly inapt. These decisions required faster processing because the subject matters at issue were of urgent national importance—specifically, Russian interference in the United States political process, and the disappearance of Jamal Khashoggi, a Washington Post columnist who was not seen alive again after entering the Saudi consulate in Istanbul, respectively—and the plaintiffs were uniquely situated to publicize responsive records. *Nat'l Pub. Radio*, 2019 WL 12262726, at *2; *Open Soc'y Just. Initiative,* 399 F. Supp. 3d at 164-65, 167.

Unlike the cases they cite, Plaintiffs provide no urgent need but rather seek them "to learn about why Defendants have delayed for over 1,000 days in adjudicating Florida's SIP Proposal." Pls.' Mot., 5. In other words, Plaintiffs seek the records to use in their separate APA claim alleging that FDA has unreasonably delayed in adjudicating Florida's SIP Proposal. Many FOIA requesters submit requests to obtain records for civil litigation, which does not constitute an urgent need for the documents. The Federal Rules and the Court's Local Rules govern the production of documents and timetables for civil litigation; not the procedures for expedited processing of FOIA requests. Plaintiffs should know this, as their

motion to compel discovery for the APA claims in their first suit was denied, in large part,[4] before they asked this Court to order expedited FOIA processing.

Plaintiffs also argue they deserve faster processing because AHCA is a sovereign state agency, *see* Pls.' Mot., 6, but there is nothing in the FOIA that requires agencies to prioritize the request of sovereign states over other requests. In fact, FDA's regulations governing communications with state officials require that state officials "shall have the same status as communications with any member of the public." *See* 21 C.F.R. § 20.88(c). There is simply no support for AHCA's claim that FDA should give it priority over other requesters.

Finally, Plaintiffs accuse FDA of "slow-walk[ing] or blow[ing] past the statutory deadlines for *all* requests and then rely[ing] on those same widespread violations as a shield when facing a lawsuit." Pls.' Mot., 5-6. This argument seeks to wish away FDA's FOIA backlog, and it misunderstands FOIA's statutory requirements. Contrary to Plaintiffs' implication, FOIA does not create a statutory *production* deadline. *See supra*, 3-4 (discussing the D.C. Circuit's decision in *CREW*, 711 F.3d at 185-90); *see also Daily Caller*, 152 F. Supp. 3d 1, 10-11 (D.D.C. 2015) ("far from demanding full collection and review of responsive documents within

---

[4] Plaintiffs first asked the Court for expedited FOIA processing in the parties' April 6, 2023 Joint Status Report, ECF 68, after their March 31, 2023, Objections to and Appeal of the Magistrate Judge's Order Partially Denying Plaintiffs' Motion to Compel, ECF 64.

twenty days, FOIA explicitly provides for continued processing of a request pending the outcome of litigation challenging an agency's delayed response."). And once in court, "so long as 'the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.'" *Id.* at 185. Here, FDA has been exercising due diligence in its searches and review of potentially responsive records and by conferring with AHCA about its searches. *See supra*, 4-9.

Plaintiffs' complaints about the amount of time it will take to finish processing AHCA's requests sidestep that the time FDA needs is a direct result of the breadth of AHCA's requests. FDA had hoped to narrow the scope of its searches via the parties' discussions, but instead AHCA has pressed for a much broader scope. *See e.g.,* Feb. 20 Ltr. And even after FDA decided to expand aspects of its searches, *see e.g.,* Mar. 17 Ltr., AHCA fought with FDA over its decisions not to include still-broader searches. *See, e.g.,* ECF No. 68 (parties wrote separately on search-related dispute). Having pushed for broader instead of narrower searches, Plaintiffs must live with the consequences of those choices rather than taking up a significantly disproportionate share of FDA's FOIA resources.

Plaintiffs' second request that the Court prematurely set a deadline for FDA's production of *Vaughn* indices should be denied, as well. Plaintiffs' motion demands a *Vaughn* index while ignoring that the Eleventh Circuit has expressly

declined to adopt "a per se rule" that requires the use of such an index in every FOIA case. *Miscavige*, 2 F.3d at 367 (11th Cir. 1993) (affirming district court's determination made "without a Vaughn index or an in camera inspection"). In *Miscavige*, as here, the plaintiffs moved for a *Vaughn* index early in the litigation, and the agency opposed the request because "a *Vaughn* index is expensive, would not be needed if the affidavits are sufficient, and was, in any event, premature." *Id.* The district court denied the plaintiffs motion, and then ultimately ruled on dispositive motions relying solely upon the declarations submitted by the agency—without requiring the agency to submit a *Vaughn* index. *Id.* The Eleventh Circuit affirmed the district court's decision and noted that "[t]he plaintiff's early attempt in litigation of this kind to obtain a *Vaughn* index . . . is inappropriate until the government has first had a chance to provide the court with the information necessary to make a decision on the applicable exemptions." *Id.* at 369. The same is true here. Any *Vaughn* index for these cases would require added time to prepare and review, work that would be done by the same agency personnel who are currently reviewing FDA's search results and who could not begin work on an index until after the review of the documents themselves is completed. Philips Decl., ¶¶ 18, 20. As such, Plaintiffs' request should be denied as entirely premature. Also, a 30-day timetable for production of an index in these cases is very likely to be unreasonably burdensome, given the volume of potentially

responsive records identified thus far. *Id.* If the search results are any indication of the ultimate volume that might need to be listed on a *Vaughn* index, FDA is likely to require more time to prepare and review an index unless the parties are able to narrow the issues in dispute prior to summary judgment. *Id.* In any event, at this early stage, Defendants ask the Court to deny Plaintiffs' request as premature and to allow FDA to proceed as typical by submitting *Vaughn* indices, if any, as part of its dispositive motions, to be scheduled after processing is finished in these cases.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

Dated: September 12, 2023            Respectfully submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director
Federal Programs Branch

*/s/ Olivia Hussey Scott*
OLIVIA HUSSEY SCOTT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Rm. 11112
Washington, D.C. 20005
Tel. (202)616-8491
Fax: (202)616-8460
E-mail: Olivia.Hussey.Scott@usdoj.gov

*Counsel for Defendants*