UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| State of Florida, *et al.*,<br><br>　　Plaintiffs,<br><br>v.<br><br>Food and Drug Administration, *et al.*,<br><br>　　Defendants. | Case No. 8:22-cv-01981-TPB-JSS |
| State of Florida, *et al.*,<br><br>　　Plaintiffs,<br><br>v.<br><br>Food and Drug Administration, *et al.*,<br><br>　　Defendants. | Case No. 8:23-cv-0877-TPB-TGW |

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| State of Florida, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Food and Drug Administration, *et al.*<br><br>Defendants. | Case No. 8:22-cv-01981-TPB-JSS |

**Declaration of Howard R. Philips**

I, Howard R. Philips, declare as follows:

1. I am the Director of the Division of Information Disclosure Policy ("DIDP"), Office of Regulatory Policy, Center for Drug Evaluation and Research ("CDER"), U.S. Food and Drug Administration ("FDA"), in Silver Spring, Maryland. I have held this position since December 2020. Prior to becoming DIDP's Director, I was its Deputy Director beginning in October 2010.

2. As the Director of DIDP, I have supervisory responsibility for, among other things, FDA's response to requests made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, for records that are maintained by CDER, as well as for providing litigation support and assistance to the U.S. Department of Justice for lawsuits filed in federal court under the FOIA, the Privacy Act, or otherwise related to the possible disclosure of

1

CDER-maintained records. CDER is the center within FDA that is responsible for regulating human drugs, including over-the-counter and prescription drugs, as well as biological therapeutics.

3. I am familiar with the FOIA requests at issue in this litigation that Plaintiff, the Agency for Health Care Administration ("AHCA") submitted to the FDA, dated July 6, 2022, March 22, 2023, and May 22, 2023.[1] The statements made in this declaration are based upon my personal knowledge and information provided to me in the course of performing my official duties.

4. I submit this Declaration in support of Defendants' Opposition to Plaintiffs' Motion to set Final FOIA Production and *Vaughn* Index Deadlines, which was filed in case nos. 8:23-cv-00877-TPB and 8:22-cv-1981-TPB, to provide information about DIDP's process for handling FOIA requests as well as DIDP's limited resources and current workload that requires DIDP to balance the importance of processing Plaintiff AHCA's FOIA requests with processing other requester's FOIA requests and DIDP's other important disclosure responsibilities. As explained below, AHCA's requests do not qualify for expedited processing under FOIA, and DIDP is unable to process, by Plaintiffs' requested deadline of February 1, 2024, the potentially responsive records identified to date—which total

---

[1] AHCA's July 2022 FOIA request is at issue in Plaintiffs' first suit, *Florida v. FDA*, 8:22-cv-01981 (M.D. Fla), and AHCA's March and May 2023 FOIA requests are at issue in Plaintiffs' second suit, *Florida v. FDA*, 8:23-cv-877 (M.D. Fla).

approximately 209,000 pages for AHCA's first request—an amount that is still likely to increase because the agency's searches for AHCA's second and third requests are ongoing without significantly expediting its processing of AHCA's requests. Plaintiffs' request, therefore, would unjustly divert significant resources away from DIDP's equitable allocation of its processing resources and harm DIDP's ability to complete other important work, including the processing of other FOIA requests that are also in litigation and FOIA requests that are ahead of Plaintiffs' in DIDP's FOIA queues.

## AHCA'S FOIA REQUESTS

5. As relevant here, FDA's Division of Freedom of Information ("DFOI") received AHCA's FOIA requests in July 2022, March 2023, and May 2023, respectively, and assigned them to DIDP for processing because they each seek CDER-maintained records about the State of Florida's Section 804 Importation Program ("SIP") Proposal, other states' SIP Proposals, and various other records about the Section 804 Importation Program, generally. Each of AHCA's requests seek a distinct set of FDA records covering a different relevant time period.

6. AHCA requested expedited processing of all three of its requests. DFOI denied these requests because AHCA's requests did not demonstrate a compelling need for expedited processing as defined under the Electronic

3

Freedom of Information Act Amendments of 1996, 5 U.S.C. § 552(a)(6)(E). AHCA did not administratively appeal any of the three expedited processing denials.

7. To date, DIDP has completed its manual and electronic searches for records responsive to AHCA's July 2022 request, which identified approximately 209,000 pages of potentially responsive material. DIDP has begun its responsiveness review of those records at FDA's standard pace of 500 pages per month. To date, DIDP has produced six interim responses to AHCA's July 2022 request, dated March 27, May 4, May 23, June 28, July 26, and August 28, 2023, comprising 3,957 pages (Bates numbered FDACDER000001-FDACDER003957).

8. DIDP's searches for records responsive to AHCA's March and May 2023 requests are ongoing and DIDP does not yet have information about the volume of material potentially responsive to these requests.

## DIDP'S PROCESS FOR HANDLING FOIA REQUESTS

9. FDA's FOIA requests are directed to the agency's main FOIA office, DFOI, which is responsible for entering each request into FDA's system, assigning it a control number ("FOIA No.") for tracking purposes, and then assigning the processing responsibility to the agency component(s) likely to have responsive records. As noted above, for AHCA's requests, DFOI assigned AHCA's requests to DIDP for processing because it is responsible for processing requests like AHCA's that seek CDER-maintained records.

10. DIDP generally employs a multi-track, first-in, first-out system for processing incoming FOIA requests.

11. DIDP considers the following categories of FOIA requests to be "simple" requests, which are generally processed on a fast track (the "Simple Track"):

    a. Requests that can be answered quickly with readily available records and that require no future searching or redacting;[2] and

    b. Requests reasonably expected by DIDP to require no more than one hour of search time and two hours of review time.

12. FOIA requests that are not considered "simple," because they will likely involve more extensive searches for numerous records in different locations and/or significant review and redaction time (i.e., requiring more than one hour of search time and more than two hours of review time), are considered "complex" requests and follow a different processing track (the "Complex Track").

13. If some portion of a FOIA request falls within one track but the remainder falls within another track, the portions will be segregated accordingly. For example, if a request is partially simple and partially complex, the simple portion may be assigned to the Simple Track and the complex portion assigned to

---

[2] Records may fall into this category, for example, if they have already been processed in response to a prior FOIA request, or because the request is for records that, pursuant to its standard procedures, DIDP has proactively reviewed and redacted in preparation for posting on FDA's website.

the Complex Track, which allows DIDP to provide a response to a least some portion of the request more quickly. In general, requests in the Simple and Complex Tracks are processed within these tracks in the order they are received.

14. If DIDP anticipates that a FOIA request in the Complex Track will require extensive searches for numerous records in different locations, it will assign multiple individuals to the request. Complex requests that require this level of staffing often involve voluminous records and frequently necessitate extensive time for searching and redacting to prepare records for release. Furthermore, such requests often require substantive input from supervisory staff to determine both the scope of the search and the ultimate releasability of the records. To promote operational efficiency, DIDP developed a system whereby once a request for certain records gets to the top of the Complex Track, requests (or portions of requests) seeking the same, or closely related records, are processed at the same time. This means that some requesters whose records are further back in the track may initially receive only a partial response to their requests, but it permits DIDP to it use its limited resources more effectively to provide at least some records to those requesters sooner than they might otherwise have received them.

15. For requests requiring a search for records, DIDP may need to search (or contact individuals within CDER and direct them to search) numerous agency files electronically and, in some cases involving older records, by hand.

16. After the search has been performed and the records have been retrieved by or sent to DIDP, DIDP conducts a preliminary review of the records collected to verify that they are responsive to the request. DIDP then conducts a page-by-page, line-by-line review of the responsive records to determine whether any FOIA exemptions apply. Any exempt material is withheld. Frequently, a team lead conducts a quality control review to ensure that the responsive records have been properly prepared for public disclosure. This review ensures that the FOIA exemptions have been applied properly and that all non-exempt information will be released. Finally, copies of the responsive records, as redacted, are prepared and delivered to the requester.

17. It is not always efficient to complete one request before moving on to the next. DIDP personnel, therefore, often work on more than one request at a time. Processing of a request may be delayed for a variety of reasons, such as resolving which exemptions apply, locating missing records, or consulting with other government agencies about the propriety of releasing certain information. In the interest of efficiency during this waiting period, the next request in the track may be processed and, if work on it is completed, the responsive records will be released at that time. Therefore, large requests often proceed alongside smaller requests to reduce the processing time for many FOIA requests and use DIDP's time and resources most efficiently.

18. When records are produced in response to FOIA requests that are at issue in litigation, the DIDP reviewers who perform all the review tasks discussed in paragraphs 15-16, are responsible for additional, litigation-specific steps that increase, often significantly, the time needed to fully process the request and support FDA's withholdings based on the relevant FOIA exemptions. These extra responsibilities for requests in litigation typically include Bates-stamping the responsive, non-exempt documents FDA produces, answering questions (i.e., from government counsel or questions raised by plaintiffs), and preparing materials in support of various motions or other filings in the litigation. The work required to support litigation-related filings can include preparing a Vaughn Index or privilege log, conducting a quality control check of the index/log to assure its accuracy and completeness, and preparing declarations or affidavits for filing in the cases.

## DIDP'S RESOURCES AND CURRENT WORKLOAD

19. DIDP is comprised of forty-seven people: a Director, a Deputy Director, forty-three redactors, and two project specialists. FOIA requests in litigation are assigned to the four-person litigation team, comprised of four redactors, who are collectively tasked with the review, redaction, and production of records relating to ongoing litigations. Here, DIDP has assigned the FOIA requests at issue to the four-person litigation team.

20. On January 1, 2022, DIDP had 781 FOIA requests in its queue pending review. From January 1, 2022 to July 31, 2023, DIDP received 4,067 FOIA requests, and DIDP completed its responses for 3,680 FOIA requests. As of August 24, 2023, DIDP has 1,204 FOIA requests open in its queue pending review—of those, 1,001 are on DIDP's complex track, described in paragraph 12 above, along with the AHCA requests relevant here. And DIDP is also providing litigation support for a total of twenty-one (21) ongoing FOIA lawsuits, including the two instant lawsuits here. Many of these pending FOIA lawsuits require periodic productions pursuant to court orders or production agreements.

21. Many of DIDP's pending FOIA requests were received prior to AHCA's FOIA requests. Specifically, DIDP has over 675 pending FOIA requests that were received prior to AHCA's July 2022 request; 883 pending FOIA requests that were received prior to AHCA's March 2023 request; and 975 pending FOIA requests that were received prior to AHCA's May 2023 request.

22. The raw numbers of FOIA requests in DIDP's queue, however, do not provide a complete picture of the volume of DIDP's FOIA-related workload. First, FDA/DIDP's tracking of its FOIA requests does not quantify the number of sub-parts sought within a given FOIA request. In my experience, FOIA requests often include multiple sub-parts that seek different types or categories of agency records and requests processed on DIDP's complex track often each seek dozens of

9

different types or categories of agency records. For example, AHCA's FOIA requests at issue here each seek fourteen different categories of records; however, each is only counted as one FOIA request in DIDP's raw numbers.

23. Second, DIDP's processing requires particular care and attention to detail due to the nature of CDER's work as the agency component responsible for regulating most human drugs and therapeutic biological products, including the drug approval process (e.g., (a) manufacturing, testing, packaging, and labeling information; (b) records prepared by FDA relating to the decision whether to approve an application seeking marketing approval; and (c) patient information relating to clinical studies). Much of the information DIDP processes under FOIA is exempt from disclosure as sensitive trade secret information, confidential commercial information, personal privacy information, and/or information protected by privileges, like the deliberative process privilege.

24. Third, DIDP's FOIA responsibilities also involve—consistent with Executive Order 12,392, Improving Agency Disclosure of Information (issued on December 14, 2005), which encourages federal agencies to increase dissemination of records to the public without the need for a FOIA request—its proactive review, redaction, and posting on FDA's website CDER-maintained records that DIDP anticipates will become the subject of frequent FOIA requests, such as drug approval packages and Warning Letters.

25. DIDP's workload includes non-FOIA responsibilities, as well. DIDP is responsible for processing and responding to requests for CDER-maintained documents and information from Congress, the U.S. Government Accountability Office, foreign, state, and local governments or regulatory bodies, and other federal agencies. DIDP also supports the U.S. Department of Justice in its investigations (e.g., of pharmaceutical companies), enforcement actions, and in other types of non-FOIA litigation, including cases brought under the Administrative Procedure Act ("APA"). DIDP's litigation-related work frequently requires it to respond to discovery requests and third-party subpoenas related to CDER's information and to compile administrative records in CDER-related APA cases.

26. Given the current workload and competing demands presented by DIDP's FOIA and non-FOIA related responsibilities, Plaintiffs' request for significantly expedited processing of AHCA's three FOIA requests would substantially increase the strain on DIDP's already limited resources. Even only processing the potentially responsive records identified to date, DIDP would need to review over 40,000 pages each month to meet Plaintiffs' proposed February 2024 deadline—and, as discussed above, the volume of pages in need of review is still likely to increase because DIDP's searches for ACHA's March and May 2023 requests are ongoing.

11

27. Based on my experience, Plaintiffs' proposed schedule is simply not feasible. Complex track requests like AHCA's FOIA requests typically require even more than the careful, line-by-line analysis of each discrete piece of information given to all DIDP-processed records; complex requests often requiring reviewers to engage in independent research and/or consultations related to aspects of the records and to implement successive quality-control style reviews to confirm they have protected confidential information in a consistent manner across the large volume of records while also consistently releasing non-exempt, responsive information.

28. FDA's proposal to review 500 pages a month, which is its typical rate of processing for FOIA requests, reflects what DIDP believes is possible with its current staffing level. Should the Court order a more rapid review than 500 pages a month, it would be unduly burdensome because DIDP would likely need divert its employees from other important duties, which could adversely impact the agency's ability to respond to other records requests, cause FDA to miss its records processing deadlines in other matters, and unduly prejudice other requestors, including those with requests that were received before AHCA's.

29. In addition, Plaintiffs' proposed deadline for production of a Vaughn index in response to AHCA's requests by March 4, 2024, or within 30 days of the date DIDP finishes its processing of records, is unlikely to be feasible here. As

noted above, the same DIDP reviewers responsible for the tasks identified in paragraphs 15, 16 and 18, above, will be responsible for producing any related Vaughn index in this case and they cannot do so until the documents have been processed. Based on my experience and the volume of potentially responsive pages identified so far, any such index for this case is very likely to take more than 30 days to complete.

## CONCLUSION

30. FDA's anticipated processing schedule accounts for what is practicable—that is, rates that not only reflect the importance of the materials requested by AHCA, but it also respects other FOIA requesters and the agency's many constraints outlined above. Plaintiffs' proposal is not just impracticable, but it is impossible to attain without severely and adversely impacting the agency's ability to respond to other record requests and production obligations.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 12, 2023 in Silver Spring, Maryland.

*Howard R. Philips*

Howard R. Philips